THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARC WARD, Respondent.

Second Department, August 1, 1983

### APPEARANCES OF COUNSEL

*John J. Santucci, District Attorney* (*Ann B. Miele* of counsel), for appellant.

*Patten & GaNun* (*Francis G. GaNun* of counsel), for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

On this appeal, the People challenge an order which resulted in the suppression of a weapon found in a stolen car. Criminal Term held that the People failed to sufficiently justify the conduct of the police because the only witness called to testify at the suppression hearing was the arresting officer who acted, not on the basis of firsthand knowledge or personal observations, but upon information

provided to him by a radio report received from police headquarters. The court held that, to sustain its burden of establishing probable cause, the prosecution was obligated to have produced at the hearing the officer who had sent the radio report.

To resolve the issues presented, we examine the nature of the relevant guarantees afforded by the Fourth Amendment and the means by which our courts enforce those guarantees. We turn first to a brief review of the pertinent facts.

In the early morning hours of June 11, 1981, the defendant and two companions, Thomas Cullen and Robert Morton, were arrested. The same day, a felony complaint was filed jointly charging them with criminal possession of a weapon in the third degree, criminal possession of stolen property in the second degree, grand larceny in the third degree and unauthorized use of a vehicle. The complaint alleged that the three men had stolen a 1974 Pinto station wagon which they borrowed from its owner, Evelyn Press, and failed to return at the agreed time, causing her to report the vehicle as stolen. The complaint further alleged that the defendant, Cullen and Morton jointly possessed a loaded firearm which had been found in the car.

Filed together with the complaint was the sworn statement of Evelyn Press who averred that she was the owner of the subject vehicle and that, on the day in question, the accused men did not have permission or authority to take or possess the car. Ms. Press further averred that she had read the felony complaint and that the information alleged to have been furnished by her was true.

On July 10, 1981, Queens County Indictment No. 1882-81 was filed. The indictment named the defendant alone and charged him with criminal possession of a weapon in the third degree.[1] Thereafter, the defendant moved, *inter alia,* to suppress the weapon, and a hearing was held.

The People called one witness, Police Officer George McFadden. He testified that, on June 11, 1981, at approxi-

---

1. By a separate indictment, Robert Morton was also charged with criminal possession of a weapon in the third degree. A third indictment charged Thomas Cullen with the same offense and also with criminal possession of stolen property.

mately 6:45 A.M., he and his partner received a radio transmission informing them that a milk truck driver had reported that he was being followed by a vehicle. Some 15 minutes later, they encountered Thomas Rera, an employee of Queens Farms, who told them that a blue Pinto station wagon had been following him for approximately a half hour and kept, "showing up" at various stops along his route. Observing no such vehicle in the immediate area, the officers decided to follow Rera's milk truck in their marked police car. Some 5 or 10 minutes later, Rera stopped his truck and pointed to a blue Pinto parked at the opposite curb. He leaned out his window and said, "That's the vehicle".

When McFadden's radio car made a U-turn, the Pinto began to move. The officers followed it for some four or five blocks and then saw the vehicle pull over to the curb. They had taken no action to compel the car to stop. When it did, they parked behind it, and McFadden radioed for a plate check. Thomas Cullen, who had been driving the Pinto, exited the vehicle and began approaching the police car. Before he reached it, McFadden received a radio communication informing him that the Pinto had been reported stolen.

The officers immediately requested backup assistance, and then exited the police car with guns drawn. McFadden placed Cullen under arrest on a stolen vehicle charge. The other officer stood guard over the passengers who remained seated in the car until additional police arrived. They then removed and arrested Robert Morton, the front-seat passenger, and the defendant, who was in the rear seat on the passenger side. A search of the vehicle subsequently revealed a gun wedged in the space on the right side of the front passenger seat.

At the conclusion of the hearing, Criminal Term granted the defendant's motion to suppress. The court found that the information received from the milk truck driver was sufficient to permit the officers to "make an inquiry of the driver and passengers as to what they were doing and if they were following the truck." Nevertheless, the court held:

"The testimony of Officer McFadden that he received information from Central that the car was stolen could have established the necessary probable cause to arrest but at the suppression hearing the challenged police conduct can be sustained only by proof that the sender of the information did in fact send it. Bare reliance on an unsubstantiated hearsay communication from the sending Officer, Central or Police Communication Unit will not suffice for probable cause to arrest. To sustain their burden at the suppression hearing the People must demonstrate that the sender possessed the requisite probable cause to act * * * It was incumbent on the People to produce the sender of the information at the suppression hearing * * *

"The testimony at the suppression hearing was insufficient to justify the arrest as the police did not have probable cause to do so. As the arrest was not valid the later search and seizure must fall as fruit of the invalid arrest."

We now reverse.

Since the officers took no action to compel the Pinto to stop, the only question before us is whether, at the suppression hearing, the People sufficiently established that the police had probable cause to arrest the defendant and his companions for possession of a stolen car.

In *People v Lypka* (36 NY2d 210, 213-214), our Court of Appeals wrote:

"A police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability * * * It follows that where the bulletin or alert, prima facie, furnishes probable cause, a reasonable search is permissible. In such circumstances the sender's knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause to search * * *

"But where on a motion to suppress, a challenge to the receiver's action is made, the presumption of probable cause that originally cloaked that action disappears from the case * * * At that point, bare reliance on an unsubstantiated hearsay communication from the instigating officer or department will not suffice for probable cause. Ultimately, to sustain their burden at the suppression hearing

* * * the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act." (See, also, *People v Landy,* 59 NY2d 369.)

This rule grows out of a recognition that the Fourth Amendment's guarantee against unreasonable governmental action may not be circumvented by the simple expedient of demonstrating nothing more than that the challenged police conduct was prompted by information received by one officer from another officer (see *Whiteley v Warden,* 401 US 560, 568). The rationale underlying the rule, however, is sometimes misunderstood.

In general, a police officer may act upon a report of criminal activity made to him by an identified and disinterested citizen (see *People v Hicks,* 38 NY2d 90, 94; *People v Moore,* 32 NY2d 67, 71, cert den 414 US 1011; *People v Inman,* 80 AD2d 622; *People v Crespo,* 70 AD2d 661; *People v Hyter,* 61 AD2d 990; see, also, *United States v Bell,* 457 F2d 1231; *United States v Wilson,* 479 F2d 936; *United States v McCoy,* 478 F2d 176, cert den 414 US 828). In such circumstances, when the conduct is later challenged at a suppression hearing, the People need call only the officer, and he may recount the statements which were made to him by the citizen prompting his actions. Such testimony is perfectly admissible and may not be excluded as hearsay. "In New York, hearsay is admissible at a pretrial suppression hearing to prove a material fact (see CPL 710.60, subd 4). And, in any event, an officer's testimony as to an accusation made to him is not truly hearsay. Although the truth of a citizen's accusation often becomes the central issue at a criminal trial, the same is not true at a pretrial suppression hearing. There, the issue is generally limited to whether the nature of the accusation, and the circumstantial indications of its reliability, were sufficient to justify the ensuing police conduct * * * Hence, at a suppression hearing, a police officer's testimony as to an accusation made to him is not offered as evidence of the truth of the charge but only of the fact that it was made. Such testimony is not hearsay." (*People v Sanders,* 79 AD2d 688, 689-690.)

The only issue at a suppression hearing in such circumstances is whether the information provided by the citizen

carried sufficient indicia of reliability to permit the officer to reasonably credit it. The fact that it may ultimately be shown that the citizen's information, although apparently reliable, was unfounded or deliberately falsified is generally irrelevant (see *People v Solimine,* 18 NY2d 477, 480; *People v Slaughter,* 37 NY2d 596, 600; *People v Ingram,* 79 AD2d 1088; *People v Friss,* 65 AD2d 907; *People v Cadby,* 62 AD2d 52, 57-58). This is so because the Fourth Amendment protects individuals against unreasonable governmental action, not against misconduct by fellow citizens.[2]

Different considerations arise in a situation such as the one involved in *People v Lypka* (*supra*). In such cases, the arresting officer testified that he acted upon information received, not directly from the accusing citizen, but from another officer who was merely relaying the information. The People remain obligated to demonstrate that the accusation was made and, for that purpose, the testimony of the arresting officer is unsubstantiated hearsay (see, e.g., *People v Havelka,* 45 NY2d 636, 641). Thus, in those instances, in the absence of testimony from the "sending" officer, the People fail to sustain their burden of demonstrating by competent evidence that the police action was in fact predicated upon information which carried circumstantial indications of reliability.

It is additionally worthy of note that, on occasion, a hybrid situation arises. In such instances, an officer acts upon circumstantially reliable information provided directly to him by a witness to the criminal activity who himself is a police officer. Such is frequently the case, for example, where an undercover officer reports to his backup team that he has just purchased narcotics from an individual. The backup team arrests the alleged seller and discovers additional drugs in his possession. Where a defendant in such a case challenges the legality of the arrest, seeking to suppress the narcotics seized from his person, we have required that the People produce the undercover officer to testify at the suppression hearing (see *People v Green,* 87

---

**2.** Needless to say, the testifying officer's credibility may be placed in issue at a suppression hearing, and the defendant can prevail upon a showing that the officer did not in fact receive the information he claims to have received (see *People v Alfinito,* 16 NY2d 181; *Franks v Delaware,* 438 US 154, 164).

AD2d 892; *People v Delgado,* 79 AD2d 976). Our reasoning in such cases depends, not upon considerations of hearsay, but upon our view of the purpose and function of the Fourth Amendment.

As in the case of a citizen-informant, the testimony of the arresting officer is offered, not to establish the truth of the accusation but that the accusation was made. However, where the accuser is himself a police officer, the truthfulness of his accusation implicates the Fourth Amendment for, if he has lied, the defendant has been victimized by improper *governmental* conduct — and this regardless of the good faith of the arresting officer. As the Supreme Court has said, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make an arrest" (*Whiteley v Warden, supra,* at p 568). Thus, the "instigating" undercover officer must be called.

■ With these principles in mind, we turn to the issue at bar. In the instant case, Officer McFadden predicated the arrest solely upon information transmitted to him by radio that the Pinto had been reported stolen. Standing alone, such testimony is unsubstantiated hearsay since it proves nothing more than that McFadden had been told by another officer that a citizen had reported the car stolen. Nevertheless, under the circumstances at bar, the arrest need not be invalidated.

Nowhere in his moving papers, and at no time during the hearing, did the defendant assert that the automobile in question had not been reported stolen. That fact is of great significance since it affects the nature of the People's obligation at the suppression hearing. As earlier noted, *People v Lypka (supra)* teaches that, when an officer acts in response to a radio transmission from a fellow officer, the sender's knowledge is imputed to the receiver. Where the information furnished would constitute probable cause, the receiving officer's actions are cloaked with a presumption that they are based upon such probable cause, and that presumption continues until challenged by the defendant. Thus, "before the People may be called upon to support the presumption by an evidentiary showing, the [defendant] must specifically challenge the reliability of the sender's

information, as opposed to the sufficiency of the information provided * * * Where a motion to suppress does not attack the underlying basis for a police radio report, the presumption of probable cause to issue it remains * * * To challenge reliability it must be interjected in such a manner as to fairly apprise the court and the opposing party that it is being contested" (*People v Bowdoin,* 89 AD2d 986, 986-987; see, also, *People v Jenkins,* 47 NY2d 722; *People v Navarro,* 61 AD2d 534). In the case at bar, as a result of the defendant's failure to offer any challenge whatsoever to the reliability of the transmission that the Pinto had been reported stolen, the People were not required to produce the "sending" officer at the suppression hearing, and in any event, any challenge to their failure to do so has not been preserved for review (cf. *People v Landy, supra).*

Moreover, on file with the court was a felony complaint in which Officer McFadden averred that the Pinto automobile had been reported stolen. Evelyn Press, the owner of the vehicle, submitted an affidavit in which she supported each of the officer's assertions, and her affidavit was likewise filed with the court. In our view, these affidavits were sufficient as a prima facie showing that, in fact, the Pinto had been reported stolen prior to the defendant's arrest. Thus, the hearing court had before it evidence of the source and reliability of the "sending" officer's communication (see *People v Benjamin,* 51 NY2d 267, 270).

Finally, the legality of the defendant's arrest does not, under the circumstances at bar, control the admissibility of the weapon. As a passenger in a stolen car, the defendant lacked standing to contest the lawfulness of the search of the vehicle (see *United States v Sanchez,* 635 F2d 47, 63; *People v McCloud,* 81 AD2d 645).

For all of the foregoing reasons, therefore, the order appealed from should be reversed, and the defendant's motion should be denied.

GULOTTA, BROWN and BOYERS, JJ., concur.

Order of the Supreme Court, Queens County, dated January 11, 1982, reversed, on the law, defendant's motion to suppress denied and matter remitted to Criminal Term for further proceedings.