OPINION OF THE COURT
Irving Lang, J.
Where evidence is seized as a result of information supplied by a police undercover agent can the prosecution prevail on a motion to suppress without testimony from the undercover agent at the suppression hearing?
THE FACTS
On February 7, 1983, the defendant was taken in custody after the arresting officer received a radio transmission from a police undercover officer that a male black, 5 feet, 5 inches — 5 feet, 7 inches tall wearing a blue coat, blue jeans and brown work shoes had sold him two glassine *490 envelopes of heroin at a particular location. The defendant, who matched the description, was arrested at the “buy” location within minutes of the transmission. A search of the defendant incident to the arrest revealed 58 glassine envelopes of cocaine and seven hypodermic instruments. The undercover agent subsequently drove by and indicated that the defendant was not the seller. The actual seller (David Watts) was apprehended two blocks from the location of the sale. The undercover agent did not testify at the suppression hearing.
THE CONTENTIONS
Having challenged the underlying basis for the arrest, the defendant contends that the People cannot establish probable cause for the arrest and search merely by the reliance of the arresting officer on the radio transmission.
To support his thesis the defendant cites a number of cases in the Appellate Division, Second Department, all of which hold that where an arrest and seizure is made solely on the basis of information supplied by an undercover officer a motion to suppress must be granted if the officer fails to testify at a suppression hearing. (People v Delgado, 79 AD2d 976; People v Petro, 83 AD2d 566; People v Green, 87 AD2d 892; People v Calderon, 88 AD2d 604.) “On a motion to suppress, challenged police conduct can be sustained only by proof that the sender of * * * information resulting in the arrest possessed the requisite knowledge * * * As such, it was incumbent on the People herein to produce, at the suppression hearing, the undercover * * * who had relayed the information to the arresting officer”. (People v Delgado, supra, p 976.)
In postulating this rule, the Second Department relies on two Court of Appeals cases relating to police transmissions, People v Lypka (36 NY2d 210) and People v Havelka (45 NY2d 636).
In my opinion the Appellate Division has misconstrued the holding in these two cases.
LYPKA AND HAVELKA
In Lypka (supra), the Court of Appeals discussed the problem of probable cause to arrest based on interpolice communications. In that case a police officer in Seneca *491 County, New York, received a telephone call from a detective in Pennsylvania to the effect that defendants were believed en route to Seneca County with a large number of designated weapons in specified stolen vehicles. The Pennsylvania detective did not disclose the source of his information. A few hours later the vehicles were spotted in Seneca County and a search revealed contraband, weapons and stolen property.
Challenging the seizure, the defendants claimed that the New York arresting officers had no probable cause to arrest or search.
Thus the Court of Appeals had to deal with police bulletins which are usually “unsubstantiated hearsay.” On the one hand it is self-evident that in a highly mobile, crime-ridden society the police must act quickly on communications from other officers to prevent crime and apprehend criminals. On the other hand, insufficient information to justify an arrest or search, lacking in probable cause, should not be legitimatized because it is filtered through a police radio, telephone or teletype.
In resolving this dilemma the Court of Appeals enunciated a compromise. The court held that a police officer is entitled to act on the strength of a communication from a fellow officer , or department and to assume its reliability (Whiteley v Warden, 401 US 560; People v Horowitz, 21 NY2d 55). In such a situation the sender’s knowledge is imputed to the receiver who “presumptively possesses the requisite probable cause to search.” (People v Lypka, supra, p 213; emphasis supplied.)
This presumption, however, only establishes preliminary or what might be termed temporary probable cause. Where a challenge to the receiver’s action is made, the presumption of probable cause disappears and “the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act.” (People v Lypka, supra, p 214; emphasis supplied.)
To the same effect is People v Havelka (supra). A patrolman of the Port Chester Police Department spoke on the phone to a desk sergeant who informed the patrolman that he had received a call from the Depot Tavern warning of a possible gun battle in the vicinity of the tavern, involving *492 the Tribe Motorcycle Club. The patrolman and other officers staked out the location. Some vehicles carrying about seven men arrived at the scene. These men were met by 10 others who exited the clubhouse. The entire group began walking toward the tavern. Although no suspicious activity was observed, “suspects” were frisked. The defendant was in possession of a gun and a blackjack. One other person had a blackjack. None of the others had weapons.
The Court of Appeals held that the testimony of the patrolman was insufficient to justify the search. The court held that “it was * * * incumbent on the People to produce the sending officer Sergeant Arlotta at the suppression hearing.” (People v Havelka, supra, p 641.) Further analysis shows, however, that even producing the desk sergeant would not have been sufficient, for the information communicated to the police was built on a “pyramid of hearsay” (p 641). The desk sergeant received the information from the tavern owner who in turn received it from the bartender and it was unclear whether the bartender had seen any Tribe member with a weapon.
Hence, although the court in Lypka (supra) and Havelka (supra) referred to the necessity of calling “the sending officer” at the hearing it obviously meant that the sending officer or agency was required to establish legal justification for the arrest and/or search. Whether the “sending officer” personally had the requisite probable cause would generally depend on whether he had direct access to the original informant.
What the Court of Appeals decided in Lypka (supra) and Havelka (supra) was that the hearing Judge must be able to determine probable cause under traditional constitutional standards. That is, did the information supplied by the primary source, the original informant, justify the police action? In order to do this the hearing court must be able to evaluate the reliability of the primary source of the information. That standard has traditionally been that information supplied by an informant can justify an arrest where the court is satisfied that the informant is reliable and has a basis of knowledge. (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410.) Basis of knowl *493 edge is simply the determination of how the informant is aware of what he is imparting, usually by personal observation. Reliability or “veracity” is manifested by such factors as whether the informant had given accurate information in the past, or is a responsible citizen. (See People v Hicks, 38 NY2d 90.)[1]
Once the reliability and basis of knowledge of the informant has been established, it is usually not necessary to call him at the suppression hearing. The public policy behind this is obvious. To encourage people to come forth with evidence of crime, to prevent reprisal, and to protect sources are all persuasive reasons for maintaining anonymity. All that is usually required is that the person to whom the informant imparted the information be called to testify. This has been codified in CPL 710.60 (hearsay is admissible at a pretrial suppression hearing to prove a material fact). Of course in an appropriate case the court might, in order to prevent duplicity, require the production of the informant at least for an in camera hearing. (People v Darden, 34 NY2d 177.)
The public policy reason for protecting the anonymity of informants applies with equal force to the police undercover agent who is in constant jeopardy in his role.
THE WARD RATIONALE
Recently, the Second Department expressed a new and more sophisticated rationale for their requirement that a police undercover officer personally testify at a suppression hearing. In People v Ward (95 AD2d 233) the court indicated that the police officer informant is to be treated differently than the citizen informant since, unlike the latter, the officer informant represents the government and, if he has lied, it involves governmental conduct in direct violation of the Fourth Amendment. “As in the case of a citizen-informant, the testimony of the arresting officer is offered, not to establish the truth of the accusation *494 but that the accusation was made. However, where the accuser is himself a police officer, the truthfulness of his accusation implicates the Fourth Amendment for, if he has lied, the defendant has been victimized by improper governmental conduct — and this regardless of the good faith of the arresting officer. As the Supreme Court has said, ‘an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make an arrest’ (Whiteley v Warden, supra, at p 568). Thus, the ‘instigating’ undercover officer must be called.” (People v Ward, supra, p 239.)
I believe that the Ward court (supra) misinterpreted the holding of the Supreme Court. Whiteley v Warden (supra), cited in Ward, is similar to Lypka (supra) and Havelka (supra). In that case an arrest warrant was issued based upon the written complaint of a Sheriff in Carbon County, Wyoming. The warrant resulted in a police bulletin which led to the arrest and search of the defendant in Laramie, Wyoming. The Supreme Court held that the seizure was unlawful because the complaint by the Carbon County Sheriff was conclusory in nature and therefore lacked probable cause. The vice in Whiteley was not that the Sheriff was not called, but that he himself did not have the requisite probable cause.
Nowhere does the Constitution or case law indicate that a police officer informant is to be treated differently than the citizen informant. Indeed, the police officer who deliberately gives false information leading to an arrest may be subject to greater sanctions than the citizen informant.
However, the public policy reasons for protecting the identity of citizen informants would not ordinarily apply to most police officers. Absent exigent circumstances or unavailability, the officer who is the primary source of the information should usually be required to testify at the hearing. Where, however, the officer informant is acting in an undercover capacity, reason dictates that his anonymity be protected. Again, if the court has reason to believe that the information of the undercover agent was false and misleading, casting doubt upon the basis for the arrest, then it could order an in camera hearing. (People v Darden, supra.) No such claim is made here.
*495 In the instant case the undercover officer had just purchased narcotics from a person he described to his backup team on the radio. The arresting officers within minutes of the buy observed the defendant at the buy location. Clearly they had justification to arrest and search incident thereto. The fact that the defendant was not the seller did not change the fact that the officer had the right to arrest and search.
I hold, therefore, that the arresting officers had reliable primary source information giving them probable cause to arrest and search the defendant and that the seizure was lawful. The motion to suppress is denied.[2]

. While the rigid two-pronged reliability and basis of knowledge test of Aguilar (supra) and Spinelli (supra) has been “abandoned” by the Supreme Court in favor of a “totality of circumstances” test in Illinois v Gates (462 US_, 103 S Ct 2317) it still, in my view, is highly relevant where the sole basis for the arrest and search is predicated on information derived from an informant.

. There is some conflict as to whether this court, a local court in the First Judicial Department, is bound by the holdings of the Appellate Division, Second Judicial Department, in the absence of rulings on the issue by appellate courts in the First Department. (Cf. McKinney’s Cons Laws of NY, Book 1, Statutes, §72; Burt v Powis, 16 How Prac 289; Hamlin v Bender, 92 Misc 16.) I subscribe to the view that a court is bound to follow the law as interpreted by courts which have appellate jurisdiction over it. Thus, this court is required to conform to the decisions of the Appellate Term and Appellate Division of the First Judicial Department, the Court of Appeals and the Supreme Court of the United States. Other “higher courts” such as the Appellate Divisions of the Second, Third and Fourth Judicial Departments are entitled to have their rulings accorded great respect and weight but adhering to those rulings is not mandatory.