OPINION OF THE COURT
Norman C. Ryp, J.
a. ISSUE
Whether the People sustained their suppression hearing initial burden of showing probable cause for arrest, when the only testifying witness is the arresting officer who acted solely upon information of a drug purchase from the suspect, transmitted by an undercover police officer who was not produced by the People, despite court direction, and substantial issues raised by the arresting officer’s testimony?
B. PROCEDURAL HISTORY
Defendant Winston Mingo was indicted on January 25, 1984 for: criminal sale of a controlled substance in the third degree (Penal Law, § 220.39); criminal possession of a *374 controlled substance in the third degree (Penal Law, § 220.16); and criminal possession of a controlled substance in the seventh degree (Penal Law, § 220.03).
On March 6,1984, defendant moved for an order, pursuant to CPL 710.20 (subd 1) suppressing evidence obtained from him ($165 in United States currency) on December 30,1983, contending the overlying arrest was not based on probable cause, negating any search and seizure thereunder.
Upon a motion to suppress, the People have the initial burden of going forward to show the legality of the police conduct, i.e., probable cause to make the arrest, and, once met, the defendant has the residual burden of persuasion, by a fair preponderance of the credible evidence to show the contrary (People v Bouton, 50 NY2d 130, 135; People v Di Stefano, 38 NY2d 640; People v Berrios, 28 NY2d 361). Specifically, to sustain its burden herein at this suppression hearing, the People must demonstrate that the sender of the radio transmission possessed the requisite probable cause, and the People can so demonstrate by producing the police officer who received said transmission and made the arrest, provided the testimony of the arresting officer does not raise substantial questions regarding the arrest. (People v Petralia, 62 NY2d 47; People v Lypka, 36 NY2d 210, 214.)
A pretrial Mapp suppression hearing (367 US 643) was conducted before this court on April 19, 25, and 27, 1984. The People called only one witness: Police Officer Joseph Gallagher (P.O. Gallagher). The witness was frank, candid and trustworthy about his conduct herein, but vague about his prior arrest history with Police Officer Carlos Gonzalez (P.O. Gonzalez), the undercover agent, whom the court gave the People repeated opportunities to call as a witness in open court or by in camera examination or even just before his trial testimony, but the People refused each time. After the People rested, the defense made the requisite motions to dismiss and then rested.
C. FINDINGS OF FACT
The court makes the following findings of fact. On December 30, 1983, at approximately 12:45 p.m., P.O. Gallagher, assigned as an investigator to the Street Enforce *375 ment Unit of the Manhattan South Narcotics Area, received a radio communication from P.O. Gonzalez. These officers were teamed together in a “buy and bust” operation. P.O. Gonzalez was an “undercover” agent, posing as an illegal drug purchaser while P.O. Gallagher functioned as the backup arresting officer after the drug purchase. At the above-noted date and hour, P.O. Gonzalez transmitted a message to P.O. Gallagher, by “walkie-talkie” radio, that the former was the $20 purchaser in a drug sale on the south side of the street at or near 334 East 100th Street in Manhattan (New York County), from, as seller, a dark-skinned male Hispanic, 5 feet 8 inches tall, 150 pounds and wearing a brown jacket with a grey hood. P.O. Gonzalez used the $20 from police supplied “buy money” currency, with serial numbers recorded, to effect the purchase.
Immediately thereafter, P.O. Gallagher proceeded in an unmarked police car, accompanied by Sergeant McGoldrick and P.O. Weiss, from Second Avenue and East 102nd Street to 336 East 100th Street where about two to three minutes after subject radio transmission, the defendant was observed, a male black on the north side of the street, although otherwise reflecting the physical description. There were about three other people standing or walking in defendant’s vicinity; P.O. Gonzalez was not present. Defendant was then stopped, arrested and searched by P.O. Gallagher who only found in defendant’s possession $165 in United States currency. There was no evidence at the suppression hearing as to whether or not said $165 included bills with the prerecorded serial numbers of the subject $20 “buy money”.
Prior to the arrest, P.O. Gallagher was on the backup team to P.O. Gonzalez (acting as undercover front man) approximately 50 times, and was the arresting officer based on information supplied by P.O. Gonzalez in 30 to 35 arrests. P.O. Gallagher did not recall any specific details of any of those arrests or the results therefrom within the criminal justice system, but upon cross-examination, was unaware of any mistaken arrests or identifications and felt that P.O. Gonzalez was generally reliable.
• D. APPLICABLE LAW
The People contend that P.O. Gallagher had probable cause to arrest and search the defendant herein. A police *376 officer may make a warrantless arrest if he has “reasonable cause” to believe that a person has committed a crime in his presence. (CPL 140.10; People v De Bour, 40 NY2d 210, 223.) “Reasonable cause” exists when apparently reliable evidence or information indicates that it is reasonably likely that an offense was committed and that such person committed the offense. (CPL 70.10, subd 2; see Sibron v New York, 392 US 40; People v Oden, 36 NY2d 382, 384.) Incidental or pursuant to lawful arrest, the police officer may search the suspect. (Chimel v California, 395 US 752, 762-763.)
A common “buy and bust” police narcotics enforcement operation involves an undercover police officer who purchases the illicit drugs (sender) and then sends a message describing the “buy” to a backup officer (receiver) who receives the communication and then arrests the suspect. Although the sender — undercover police officer — may have probable cause, he or she usually defers to the backup officers to make the arrest so as to avoid exposing his or her identity, dangerous reprisals from criminal elements, and neutralization of his or her effectiveness as a covert police officer particularly in any current or future investigation.
A police officer, without firsthand knowledge of a crime, may properly respond to and comply with another police officer’s radio communication directing the warrantless arrest of a suspect to the crime. Where the officer sending the communication has reliable evidence or information regarding a suspect sufficient to constitute probable cause to arrest, the officer receiving the communication may properly arrest the suspect, and the sender’s knowledge is imputed to the receiver. (People v Lypka, 36 NY2d 210, 213, supra, citing Whiteley v Warden, 401 US 560, 568.) The receiver is rebuttably presumed to possess the requisite probable cause to arrest and search the suspect. (People v Lypka, supra.)
This presumption of preliminary or temporary probable cause entitles the receiver to act upon the radio call and make an arrest, but mere reliance alone is insufficient to sustain the arrest. If the sender does not have probable cause, the presumption favoring the receiver will not “insulate” the sender and support the arrest. (Whiteley v *377 Warden, supra, p 568.) If the sender is not produced, the “suppression Judge [is] reduced to sizing up the arresting officers rather than the evidence” of probable cause possessed by the sender. (People v Bouton, 50 NY2d 130, 136, supra.)
This rebuttable presumption of probable cause in favor of the receiver will stand and support the arrest if the defendant fails to challenge the reliability of the sender’s information. (People v Jenkins, 47 NY2d 772; People v Ward, 95 AD2d 233, 239; People v Bowdoin, 89 AD2d 986.) This presumption continues until and unless challenged by the defendant at the suppression hearing, whereupon the People must come forward to show that the sender possessed probable cause. (People v Havelka, 45 NY2d 636, 641; People v Lypka, supra, p 214.)
A recent series of decisions in the Appellate Division, Second Department, relying upon People v Havelka (supra) and People v Lypka (supra), have clearly stated that the undercover officer must testify at the suppression hearing (1) if his reliability and basis of knowledge have been questioned by the defense,* and (2) if the probable cause for the arrest and seizure is solely based upon information known to the undercover officer who communicated that information to the arresting officer. The sending officer must testify for the People to sustain their burden unless the receiving officer who testifies possesses independent knowledge sufficient to support a finding of probable cause. (People v Green, 87 AD2d 892, 893; People v Petro, 83 AD2d 566; People v Delgado, 79 AD2d 976.)
Recently sitting in the Criminal Court, New York County, Judge Irving Lang held that the officer who is the primary source of information should be required to testify unless he or she is working undercover. Where, however, “the Court has reason to believe that the information [from] the undercover agent was false and misleading, casting doubt upon the basis for the arrest, then it could order an in camera [Darden] hearing [and. the undercover must testify]”. (People v Waterman, 122 Misc 2d 489, 494.)
*378 Later, the Court of Appeals, in its most recent pronouncement, involving undercover policy buy and bust operations held, by a 5-2 vote, that the People can sustain their burden at the suppression hearing without calling the undercover officer to testify, provided the sending officer had personal knowledge of the crime and was reliable, and, also, provided the evidence presented at the hearing raised no “substantial issues relating to the validity of the arrest, the resolution of which could be aided by requiring the People to produce the undercover officer or by making him available to the defendant.” (People v Petralia, 62 NY2d 47, 52, supra.)
Judge Kaye’s dissent in Petralia (supra), in which Chief Judge Cooke concurred, cogently stated that in the “buy and bust” situation, the prescriptions of the Fourth Amendment of the United States Constitution, and section 12 of article I of the New York State Constitution against unreasonable government action, protect the criminal accused since the informant is a government officer as opposed to a private informant; and give the accused the right “to put government accusers — as opposed to private accusers — to their proof on the issue of probable cause to arrest or to search * * * Where the accuser is a police officer, and not a private informant, the soundness of his accusation implicates the accused’s constitutional rights, for if the accuser is in error, the accused has been the subject of improper governmental conduct, regardless of the good faith of the arresting officer * * * The end result of today’s decision [that the undercover officer usually need not testify] is that the People can fulfill that burden [to show probable cause] at the suppression hearing by producing an officer who has no knowledge of and cannot be impeached or even examined concerning the basis of probable cause, but who will testify only * * * that the defendant committed a crime and that there is contraband in defendant’s automobile.” (People v Petralia, supra, pp 54-56).
In Petralia the sending officer was not called to testify but the arresting officer testified about the sending officer’s radio message which stated that a heroin purchase occurred and described the drug seller as a male white, *379 detailing height, weight, clothes, and the color, make and license number of the automobile driven by the seller. There was further testimony by the arresting officer that the money used by the undercover officer to purchase the heroin was found on defendant’s person and identified. In addition, the reliability of the sender was not unknown. Where the source of the receiver’s information was a police officer who witnessed the crime, testimony by the receiving officer, if credited, is alone sufficient to establish probable cause at the suppression hearing and the undercover officer need not testify unless “substantial issues” have been raised which he or she could resolve (People v Petralia, supra, p 52.)
E. CONCLUSIONS OF FACT AND LAW
The presumption of probable cause to arrest favoring the receiver/arresting officer was removed when defendant challenged the reliability of the sender/undercover officer, and the burden of coming forward to show probable cause was thereby imposed upon the People. (People v Lypka, 36 NY2d 210, supra; People v Havelka, 45 NY2d 636, supra; People v Jenkins, 47 NY2d 722, supra; People v Ward, 95 AD2d 233, supra; People v Bowdoin, 89 AD2d 986, supra.)
The key issue at the suppression hearing was whether or not the information provided to and relied upon by the arresting officer, who had no direct personal knowledge of the criminal activity, had sufficient indications of reliability and accuracy to justify the consequent arrest or whether substantial issues have been raised which only the undercover agent could resolve.
The problem with relying upon the testimony of the arresting officer alone is that the probable cause determination at the suppression hearing rests entirely upon hearsay, although admissible in New York under CPL 710.60 (subd 4), with the attendant deprivation of the defendant’s right of confrontation and ability to test the reliability of the evidence against him. This scheme works to insulate the sender from the suppression court’s scrutiny (Whiteley v Warden, 401 US 560, supra), and the suppression Judge or Justice is thereby limited to evaluating the hearsay testimony of the arresting officer rather than the direct evidence of probable cause which could be provided by the *380 sender. (People v Bouton, 50 NY2d 130, supra.) Further, since the ultimate accuser is the government via the undercover officer, there are Federal and State constitutional issues which arise regarding governmental conduct. These constitutional issues are avoided or evaded if the People can sustain their burden at the hearing simply by producing the arresting officer who had no firsthand knowledge of the alleged crime, thereby leaving the defendant unable to conduct effective cross-examination concerning the evidence against him and possible improper governmental conduct. (People v Petralia, 62 NY2d 47, supra [Kaye, J., dissenting].)
As noted, the court gave repeated opportunities to the People to call the undercover officer as a witness in open court or by in camera examination or even just prior to his trial testimony. The People refused to call the undercover officer relying upon, initially, People v Waterman (122 Misc 2d 489, supra), and later upon People v Petralia (supra).
At no time did the People ever assert that the undercover was unavailable or, as is often the case, that exposure of the undercover officer’s identity would jeopardize him or an ongoing investigation or buy and bust operation. Thereafter, the court directed and ordered the People to produce the undercover officer as a witness in open court or by in camera examination, whereupon the People again declined to produce P.O. Gonzalez.
Under the guidelines established by the majority in Petralia (supra), the People’s evidence should survive a motion to suppress in the “buy and bust” situation by mere reliance upon hearsay testimony from the receiving officer, without calling the sending officer, as long as the receiver’s testimony does not raise “substantial issues relating to the validity of the arrest” (People v Petralia, supra, p 52).
It appears to this court that there are various factors that comprise “substantial issues” raised under Petralia (supra), including but not limited to: (1) questionable past reliability and veracity of the governmental undercover agent; (2) specificity and accuracy of detail of the descriptions of the defendant and the alleged crime; (3) present identity and availability of the undercover agent or reason^) for unavailability or anonymity; (4) whether or not *381 the undercover agent will be a trial witness; (5) whether or not an ongoing investigation will be jeopardized by the undercover’s present testimony; (6) whether or not the undercover agent’s safety will be endangered by giving testimony at the suppression hearing.
The question of whether “substantial issues” have been raised, therefore, becomes the fulcrum issue and, under the subject totality of facts and circumstances, must be answered affirmatively. In Petralia (supra), the undercover officer’s radio description detailed not only the suspect’s sex, race, height, weight and clothing, but also, the color, make and license number of the suspect’s automobile. Furthermore, in Petralia, the undercover’s buy money was specifically identified as the money recovered from the defendant, and the sending officer’s reliability was not unknown. In contrast thereto, the instant facts are less clear or certain: (1) undercover Officer Gonzalez in his radio communication to P.O. Gallagher described the suspect as a dark-skinned male Hispanic, while the person arrested was a male black; (2) the undercover officer described the suspect’s location on the south side of 100th Street but the defendant was on the north side of 100th Street when arrested; (3) the arresting officer did claim that the undercover officer was reliable but his answers were generalized and evasive when asked for details to support his assertion that the information provided by the undercover officer in prior arrests had been reliable, and (4) the People offered no evidence to establish that any portion of the $165 United States currency recovered from defendant was the recorded buy money used by undercover Officer Gonzalez.
In sum, (l)-(2) the discrepancies and lack of detail regarding the defendant’s physical description and location (north or south side of 100th Street); (3) the total lack of concrete details regarding the sender’s reliability; and (4) the missing identification of the “buy money” serial numbers all are substantial issues concerning the validity of the arrest about which the undercover officer’s testimony would have been invaluable to resolve the above substantial issues relating to the validity of the arrest. The People refused to produce the undercover officer despite opportunities from and direction by the court.
*382 While each of the above-described open issues, distinguishing People v Petralia (62 NY2d 47, supra) from the present case, may properly and justifiably be a “substantial” issue, this court finds, in fact and law that, cumulatively, “substantial” issues have clearly been raised concerning the validity and legality of the arrest, which warrant suppression of the evidence ($165 in United States currency) found on defendant, and which the People declined to resolve without explanation beyond citation to People v Waterman (122 Misc 2d 489, supra) and People v Petralia (supra).
Thus, under the totality of the circumstances, the People have failed to sustain their initial burden of going forward to show probable cause for the arrest and search thereunder. (See People v Bouton, supra, and authorities cited therein.) Accordingly, for the foregoing reasons, defendant’s CPL 710.20 (subd 1) motion to suppress is granted and this case is returned to its originating Conference Part 60 for appropriate action, including determination of defendant’s motion to suppress the indictment, in accordance with this opinion and decision.

 While this two-pronged reliability and basis of knowledge test (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410) was in 1983 replaced by a “totality of circumstances” test in Illinois v Gates (462 US 213), it is still quite relevant where the sole basis for the arrest and search is information derived from an undercover informant.