■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUGUSTUS REDDICK, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Aronin, J.), rendered March 3, 1982, convicting him of burglary in the third degree, attempted petit larceny, criminal mischief in the fourth degree, and possession of burglar's tools, upon a jury verdict, and imposing sentence. The appeal from the judgment brings up for review the denial, after a hearing, of defendant's motion to suppress certain physical evidence.

Judgment affirmed.

At the suppression hearing, Detective Vincent Clancy testified that he was on radio motor patrol when he received a radio run about a burglary in progress at a Brooklyn apartment. The detective apprehended defendant as defendant was walking out the door of the apartment. On this appeal, defendant asserts that the arrest was illegal as the record is devoid of any information as to who dispatched the detective to the apartment. We agree with the suppression court that the motion should be denied.

Where an arresting officer receives a radio transmission from another officer, the reliability of the information conveyed may be assumed by the officer in the field (*People v Lypka,* 36 NY2d 210). If the information so conveyed would be sufficient to constitute probable cause then, absent a specific challenge by the defendant to its reliability, the suppression court may also assume it to be reliable, and the People, upon proving the contents of the transmission, have satisfied their burden of establishing probable cause to effect the arrest (*People v Dodt,* 61 NY2d 408, 416; *People v Jenkins,* 47 NY2d 722; *People v Lypka,* 36 NY2d 210, *supra; People v Ward,* 95 AD2d 233). By failing to challenge the reliability of the transmission, any question regarding the basis of the sending officer's information has not been preserved for review (*People v Ward, supra,* p 240).

In the case at bar, defendant did not attack the reliability of the radio report in his moving papers. He merely asserted in conclusory fashion without setting forth specific facts that the "search was without probable cause to make an arrest". At the close of the hearing, defense counsel simply offered the conclusory statement that probable cause was lacking. Thus, the People were not required to produce the "sending" officer at the suppression hearing and, in any event, their failure to do so has not been preserved for review (*People v Ward, supra*).

Defendant also contends that the trial court erred in allowing the arresting officer to testify, over objection, that he recovered two ladies' rings and a roll of pennies from defendant's pocket. There is absolutely no evidence connecting these items to the burglary charged in the instant indictment and the admission of this testimony carried with it the implication that defendant had obtained them through some other illegal activity. While this testimony should properly have been excluded, its admission in this case was harmless error. Not only was the evidence of guilt overwhelming, but any prejudice was tempered by the court's cautionary instruction to the jury to the effect that there was no evidence to indicate that these items did not belong to the defendant. Mollen, P. J., Lazer and Brown, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum:

Although I am otherwise in agreement with the views expressed by the majority, in my opinion, the erroneous admission of the two ladies' rings and the roll of pennies recovered from the defendant's person operated to deprive him of his constitutional right to a fair trial. Accordingly, the judgment appealed from must be reversed, and the case remitted for a new trial.

Defendant was arrested while exiting the complainant's Brooklyn apartment on the afternoon of March 1, 1981 and was subsequently charged with the crimes of burglary in the third degree, attempted petit larceny, criminal mischief in the fourth degree and possession of burglar's tools. At the time of his arrest, the defendant had in his possession a screwdriver, a roll of pennies and two ladies' rings, none of which was found to be the property of the complainant. Notwithstanding the foregoing, however, the arresting officer was permitted to testify, over objection, to the defendant's possession of the rings and the roll of pennies, and the foregoing items were admitted into evidence by the court. The jury was then instructed as follows:

"THE COURT: As I indicated when I admitted them into evidence, these were the three items that were found. These were the three things found on the defendant.

"There is no indication in the record at all as to they're [sic] not being his three items or that they belong to anybody else at this point.

"Do we understand that, members of the jury?

"(The jury answered in the affirmative.)"

Thereafter, when defense counsel attempted to place the rings in their proper perspective by stating, during summation, that "[t]he rings have nothing at all to do with this case, nothing at

all was taken from this complainant. He said so, and he said so specifically when I asked him", the prosecutor responded with the following riposte:

"What was August Reddick [the defendant] doing in that apartment? What was he doing with a screw driver in his pocket? *What was he doing with two lady's rings in his pocket?*

*"Lady's rings were not taken from that apartment"* (emphasis supplied).

At this point, defense counsel renewed his objection to what can only be seen as a thinly veiled attempt to imply that the rings in question had probably been stolen elsewhere, whereupon the trial court again overruled the defendant's objection and denied his application for a mistrial. From the ensuing judgment of conviction, the defendant appeals.

In my view, the receipt of the testimony regarding the rings and the roll of pennies and their admission into evidence operated to deprive this defendant of his right to a fair trial, as there was no evidence connecting any of those items to any of the charges and the only conceivable purpose for which they could have been admitted was to contaminate the minds of the jurors by demonstrating the defendant's alleged criminal propensity. Moreover, the cautionary instruction adverted to by the majority in no way served to alleviate this prejudice, as the court's instruction did not operate to remove these items from the jury's consideration and, in fact, provided the jury with no guidance whatsoever on the thorny question of how this evidence was to be considered by them. Finally, the prejudice engendered by the foregoing series of events was only exacerbated during summation when the prosecutor was permitted, over objection, to reinforce the notion of the defendant's criminal propensity by recalling for the jury the fact that the ladies' rings which had been admitted into evidence had not been taken "from *that* apartment" (emphasis supplied), thereby implying rather broadly that they were the ill-gotten gains of the defendant's prior criminal endeavors. Notably, while the trial court was unable to provide the jury with *any* guidelines for the consideration of this damning evidence, the prosecutor had no apparent difficulty in communicating to the jury the manner in which *he* believed that they should consider it.

In my view, the combined effect of the foregoing errors operated to deprive this defendant of his constitutional right to a fair trial, which deprivation may not be obviated by the majority's reliance upon the overwhelming character of the remaining evidence of guilt. In fact, were the majority's approach to be logically extended, we would be forced to conclude that, in those

instances in which the proof of guilt is overwhelming, it makes no difference how egregious, damaging or prejudicial the errors committed at the trial may have been. Fortunately, the law is contra. As the Court of Appeals so aptly noted in *People v Crimmins* (36 NY2d 230, 238): "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction. *The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right*" (emphasis supplied).

Accordingly, since, in my opinion, the defendant's right to a fair trial has been infringed upon in this case, I respectfully dissent and vote to reverse.