■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RALPH ADAMS, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered June 8, 1976, convicting him of attempted robbery in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress his confession. Judgment reversed, on the law and the facts, motion to suppress granted, and new trial ordered. The voluntariness of a confession must be shown beyond a reasonable doubt (People v Valerius, 31 NY2d 51). The " 'totality of the circumstances' " (see Clewis v Texas, 386 US 707, 708; People v Anderson, 42 NY2d 35, 38) demonstrates that that burden was not met by the People. We note particularly the following which has been, in effect, conceded: (1) defendant, an addict for about 13 years, used 15 bags of heroin a day; (2) as of 5:10 P.M. on the day of his arrest, he had taken only two bags of heroin and (since he was concerned that additional bags were not available) two seconals to hold him over (that was at 6:00 A.M.); (3) the arresting officer noted defendant's slow, slurred speech and slow movements, and testified at the trial that this would indicate that defendant was high on drugs; (4) prior to defendant's questioning at the police station (which started at about 8:00 P.M.), the arresting officer noted on the prescribed physical examination report that defendant stated he had needle marks on his arm; (5) the interrogator, Detective Hughes, testified that defendant's speech was "sort of slow" and "sort of like hesitating"; (6) in his statement defendant said, "I'm a sick person. I use drugs"; (7) nevertheless, Hughes did not ask defendant, during the two hours preceding the signing of the statement at 10:00 P.M., whether he was sick at that time; (8) Hughes testified that he did not realize that defendant was under the influence of drugs or might be an addict until about 11:00 P.M., when he saw defendant doubled over holding his stomach; and (9) at about 11:30 P.M., Hughes saw that defendant was sweating and that his nose was running. Defendant's testimony at the hearing was that: (1) Hughes asked him whether he was an addict and when defendant told him that he was, Hughes looked at his arms; (2) Hughes said, "Cooperate with us and I promise I'll get you to the hospital as soon as you tell us what happened"; (3) he told Hughes that he was sick, was going through withdrawal and needed a fix; (4) on three occasions he asked Hughes to get him to a hospital; (5) at one point, a police sergeant came in and said, "It will be a lot easier on you. We will get you right to the hospital. Just cooperate with us"; (6) before signing the statement written out by Hughes (which defendant testified he did not read), Hughes told him, "The sooner you sign it the sooner you get to the hospital"; and (7) at one point (apparently before signing the statement) defendant, accompanied by a detective, went to the toilet and vomited into the toilet bowl. The People's witnesses denied that defendant had vomited. Nevertheless, it must be noted that Officer Boden, who had taken defendant to the hospital, had checked the box for "Nausea/ Vomiting" in his report, and he testified that usually he would cross out "Vomiting" if there was only nausea. Although we do not credit a great deal of defendant's testimony, the police officers' denial of knowledge (prior to the signing of the statement) that defendant was an addict and that he was in withdrawal is so full of contradictions and improbabilities as not to be credited. Under the circumstances there is, at the least, a reasonable doubt as to whether defendant signed the statement so that he could get to a hospital before the dire effects of "cold turkey" would close in on him. If that were the case, clearly the statement was not voluntary but was the result of a coercion akin to physical duress (and far more than psychological

duress—which itself would taint a confession [see *People v Helstrom,* 50 AD2d 685; *People v Zimmer,* 68 Misc 2d 1067, 1074, affd 40 AD2d 955]). Further, since the evidence indicated some possible question as to whether defendant knew what he was signing (in view of his being, at the least—as stated by the County Court—"in the initial stages of withdrawal"), it was improper to deny his counsel the right to attempt to show the falsity of some of the statements therein (cf. *People v Adams,* 26 NY2d 129, 137-138; *People v Schompert,* 19 NY2d 300, 307, cert den 389 US 874). Although not conclusive, Detective Hughes admitted that during the earlier period of his questioning, defendant failed to make any inculpatory statement and that he then told defendant, "You know, the DA's call and they say was this guy cooperative * * * or did he give you a hard time?" We agree with the County Court that while this was "a questionable practice", standing by itself it would not invalidate the confession; however, in the light of all of the facts in this record we accord some significance to the remark on the issue of voluntariness (see CPL 60.45, subd 2, par [a]). Finally, the arresting officer admitted that while he was transporting defendant to the police station, and without having given him the *Miranda* warnings, he elicited information from defendant as to the name of the accomplice and the presence of a gun. Similar incriminating admissions were included in the written statement made at the precinct after the *Miranda* warnings had been given. The County Court concluded that this was not a true "cat-out-of-the bag" case (see *United States v Bayer,* 331 US 532, 540; *People v Jackson,* 41 NY2d 146; *People v Chapple,* 38 NY2d 112) because defendant testified at the hearing, held some six months later, that he did not remember any conversation he had with the arresting officer in the course of that trip. The County Court stated: "So it had no influence whatever on the statement." Defendant's testimonial explanation was that he was under the influence of the two seconals he had taken at 6:00 A.M. However, this does not lessen the probability that the prior admissions would have influenced his statement a few hours later. Further, if indeed he was so affected by the seconals, taken about 12 hours earlier, that he could not remember that two hours earlier he had made such inculpatory statements, he would have been in such a confused state of mind as to render him incapable of making an intelligent waiver of his rights. For all of these reasons, the judgment must be reversed and a new trial ordered. Mollen, P. J., Hopkins, Suozzi and Shapiro, JJ., concur; O'Connor, J., dissents and votes to affirm the judgment.