■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEVINE LOVE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kramer, J.), rendered June 3, 1980, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of a motion to suppress

physical evidence and a statement. Judgment affirmed. Officer Marvin Albaum, the sole witness at a suppression hearing conducted pursuant to defendant's motion to suppress physical evidence and a statement, testified that on November 14, 1979, at approximately 1:15 A.M., he received a radio call report of shots fired in front of a grocery store at a specified location. The perpetrators were described as two black males, one wearing a blue sweat suit and one wearing a long tan or beige or gray coat. Albaum, in his subsequent testimony, conceded that the description may have been of a jacket rather than, a coat. Albaum and his partner responded to the radio run within three minutes of its transmission. There were approximately 10 people near the store, and Albaum observed defendant amid a group of approximately six of these people. Defendant was wearing a long gray or tan coat, and was standing within five feet of a man in a blue sweat suit. Defendant was the only person at the scene wearing a long coat; the others were wearing jackets. Defendant was the only one with his hand in his outer pocket. There was a large bulge in the pocket. Albaum drew his gun, immediately approached defendant, and stated, "Police, don't move". He grabbed the pocket of defendant's coat from the outside, feeling defendant's hand and a hard object he believed to be a gun. He then reached into the pocket and removed a loaded .25 caliber gun. The man in the blue sweat suit, the only other person searched or frisked, was released. The atmosphere in front of the store was not a friendly one at the time of the arrest. Defendant was already under arrest when other police cars responded to the scene. Following the receipt of *Miranda* warnings, defendant asserted that he had found the gun. After the denial of defendant's motion to suppress the gun and his statement, the matter proceeded to trial. The jury rejected defendant's trial assertion that the police had discovered the gun in a dinner jacket found in a pile of rags, and convicted him of criminal possession of a weapon in the third degree. We now affirm. Defendant's primary contention is that he was subjected to an unreasonable search premised on an inadequate predicate. We do not agree. A police officer may stop an individual based on a reasonable suspicion that the person is committing or has committed a crime, and the officer may search for weapons based on a reasonable suspicion that he is in danger of physical injury (CPL 140.50, subds 1, 3). The ultimate suppression determination will depend on a balancing of the individual's legitimate interests against the reasonableness and appropriateness of the police action. The courts will look to the reasonableness of the manner of the approach and seizure, the proof of a describable object or conduct that provides a reasonable basis for believing the individual has a weapon, and whether there has been a pretext stop and frisk or whether the police have been otherwise motivated by an improper or irrelevant purpose (*People v Prochilo,* 41 NY2d 759). A police officer may assume the reliability of a radio bulletin transmitted from a fellow officer (*People v Lypka,* 36 NY2d 210). When the source of the transmission is an anonymous tip, the courts must evaluate the quality and contents of the information, and the circumstances of the encounter (*People v De Bour,* 40 NY2d 210, 224, 225). Furthermore, in evaluating the reasonableness of the police behavior, the court must be cognizant that the " 'police officer is not an actor in a Hollywood scenario * * * the police officer is experiencing the dangers of the real world' " (*People v Stone,* 86 AD2d 347, 349). Under the totality of the circumstances, the police conduct here was reasonable and was not violative of defendant's legitimate expectations of privacy. Arriving within minutes of the report of a gun actually being fired at a specified location late at night, Officer Albaum was able to immediately corroborate the description broadcast of the alleged perpetrators. He saw defendant wearing a long gray or tan coat standing near a man in a blue sweat suit. Defendant was the only

individual with his hand in his outer pocket, and a large bulge was readily apparent. In approaching defendant with his gun drawn and initiating the search with the minimal step of grabbing the bulge from the exterior part of the coat, Officer Albaum acted within the scope of his authority to take necessary precautionary steps so that he could pursue his investigation without fear of violence (*People v Benjamin,* 51 NY2d 267; *People v McLaurin,* 43 NY2d 902; *People v Lambert,* 84 AD2d 849). His actions here were reasonable and proper (*People v Stone, supra; People v Dominquez,* 84 AD2d 820; *People v Grant,* 83 AD2d 277). Upon feeling what he believed to be a gun, he properly confiscated it and arrested defendant. Defendant's other contentions merit little discussion. He claims that it was prejudicial to allow the jury to hear the contents of the radio run. This evidence was properly admitted because it was necessary to give the jury a complete picture as to why Albaum arrived at the scene and to avoid speculation (see *People v Fay,* 85 AD2d 512, app withdrawn 56 NY2d 593; see, also, *People v Montanez,* 41 NY2d 53, 58). In addition, the court gave a clear instruction that the contents of the radio run were not admitted to establish their truth, but only to explain Albaum's presence. The jury was in no way diverted from the issue presented to them as to whether defendant possessed the gun in his pocket or whether the police found it in a dinner jacket on a pile of rags. The claimed inadequacies in the charge were not objected to and defendant therefore waived his objections (CPL 470.05, subd 2). Furthermore, the charge as a whole adequately explained the applicable law (see, e.g., *People v Patterson,* 76 AD2d 891). Finally, the prosecution's summation with regard to credibility was fair comment on the arguments urged in defense counsel's summation. Accordingly, the judgment of conviction is affirmed. Thompson, O'Connor and Brown, JJ., concur.

Bracken, J., concurs to affirm the judgment, with the following memorandum, in which Titone, J. P., concurs: I fully concur with the conclusion that the action taken by the police officer in his search for weapons on the person of the defendant was based upon a reasonable suspicion that the officer was in danger of physical injury, that the action undertaken involved the least amount of intrusion upon the person of defendant and that the subsequent seizure of the loaded gun from defendant's pocket was not illegal and in violation of defendant's constitutional rights (see *People v Benjamin,* 51 NY2d 267). With respect to the court's charge to the jury which properly placed the burden of proof upon the People to prove beyond a reasonable doubt all elements of the crime charged, and which then erroneously referred to such burden in terms of "moral certainty", no objections were taken nor were any requests made by defendant with respect to such charge and accordingly the error was not preserved for review (*People v Thomas,* 50 NY2d 467; CPL 470.05, subd 2). Moreover, in light of the overwhelming evidence of defendant's unlawful possession of the loaded weapon, a reversal as a matter of discretion in the interest of justice is not warranted (CPL 470.15, subd 3, par [c]; *People v Crimmins,* 36 NY2d 230). I would note that the prosecutor's summation, wherein he requested the jury to return a vote of "no more guns on these city streets, and that the defendant is guilty as charged", and his further attempt in summation to bolster the credibility of the prosecution witnesses, did not constitute fair comment. The trial court, however, timely intervened in both instances, including the giving of curative instructions, so as to negate any prejudice that might have resulted from such improper comments.