OPINION OF THE COURT
Simons, J.
Defendant appeals from two judgments. The first convicted him after a jury trial of criminal possession of a dangerous weapon, third degree (a switchblade knife, as a second offense [see Penal Law, § 265.02, subd (1)]), and nine counts of criminal possession of stolen property, second degree (credit cards). The second judgment convicted him upon his plea of guilty to attempted burglary in the second degree. He has been sentenced to concurrent two- to four-year terms of imprisonment on both judgments.
On this appeal defendant contends that the first judgment must be reversed because the court erred in refusing to suppress the knife and credit cards and in permitting him to make a pro se summation to the jury. He seeks reversal of the second judgment because the plea, entered upon a promise of a sentence concurrent with those received in the first judgment, is “inextricably intertwined” with it (see People v Rogers, 48 NY2d 167) People v Clark, 45 NY2d 432; cf. People v Lowrance, 41 NY2d 303). There should be an affirmance.
The facts as found by the hearing court established that defendant was arrested on the morning of September 23, 1978, at approximately 4:00 a.m., near the corner of 110th *373 Road and Merrick Boulevard, in Queens County. Police Officers Walter Travis and George Astarita were cruising the area in an unmarked police car when they recognized a parked car as one sought in connection with several burglaries in the neighborhood the previous week and described in police bulletins as a brown Plymouth, Pennsylvania license number 09487T and having a “very beat up” body. The officers stopped and approached the Plymouth. Officer Travis testified that as he did so he recognized defendant seated behind the steering wheel as fitting a description of the suspected burglar given him by investigating officers, i.e., a black male approximately 5 feet 5 inches to 5 feet 8 inches tall, weighing 125-140 pounds and of slim build. Officer Travis identified himself to defendant as a police officer and asked to see his driver’s license and registration. When defendant replied that he did not have his wallet, Travis asked him to step out of the car. When he got out, Travis observed two knives on the driver’s seat and in plain view. One was a switchblade. Travis asked the defendant what his name was and defendant stated it was Dennis Tandy. Travis then noticed something he described as small and black and which he was unable to identify, sticking out of defendant’s back pocket. Travis seized it and discovered it was a wallet. He again asked defendant if he had any papers for the car and when the defendant answered that he did not, Travis opened the wallet and found $60 in cash and several credit cards bearing the name of Milton Carter. Defendant was taken to Carter’s home nearby and the wallet and contents were identified by Carter as property stolen from him the preceding afternoon.
The principal issue on appeal is defendant’s claim of unlawful search. He contends that the information possessed by the police officers was hearsay and that under our decision in People v Elwell (50 NY2d 231), their observations at the scene were not sufficient to verify it and supply probable cause for the subsequent search and arrest. In Elwell, we held that: “the rule under our Constitution [is] that a warrantless search or arrest will be sustained only when the police observe conduct suggestive of, or directly involving, the criminal activity about which an *374 informant who did not indicate the basis for his knowledge has given information to the police, or when the information furnished about the criminal activity is so detailed as to make clear that it must have been based on personal observation of that activity” (People v Elwell, supra, p 241; and see People v Rodriguez, 52 NY2d 483).
Since none of the conduct observed was “suggestive of, or directly” related to the criminal activity, nor was any of the hearsay information related to the police officers “so detailed as to make clear it must have been based on personal observation of that activity”, defendant contends that the officers lacked probable cause for the search and arrest.
Preliminarily, the People contend that the challenge to the officers’ basis of knowledge was not preserved for review. We think it was. Defendant’s omnibus motion asked for a hearing to suppress physical evidence obtained as the result of an unlawful search and seizure pursuant to CPL 710.20. It did not challenge the hearsay information on which the police officers acted because defendant did not know the basis upon which they had acted. The suppression hearing was held on three separate days, however, April 17, May 2 and May 10, 1979, and when it became apparent on the first day of the hearing that the officers relied on the radio bulletin and information acquired from other officers, defense counsel informed the court that she challenged the officers’ conduct pursuant to People v Lypka (36 NY2d 210) and that she sought an offer of proof by the People to support the hearsay information they relied upon in making the search and arrest. Thus, the District Attorney had early notice of defendant’s claim and an opportunity to come forward with the necessary evidence. This was sufficient to preserve the point for appeal. To require that a Lypka claim must be specified in the omnibus motion or lost would only result in unnecessary work for the District Attorney and delay in the hearing while locating witnesses. Undoubtedly, in time, the claim would become a routine demand by defense counsel, made in an excess of caution and, in many cases, without any serious intention of challenging the officers’ basis of knowledge for the search.
*375 Turning to the merits, we start with the rule that a search or seizure may only be sustained under Federal and State Constitutions if made upon probable cause (US Const, 4th Arndt; NY Const, art I, § 12). Probable cause may be supplied by hearsay information, however, and police officers are entitled to act on the strength of police radio bulletins or information acquired from fellow officers. Presumptively, such information is reliable and accurate. Once a defendant challenges the police action, the presumption of probable cause disappears and the knowledge of the sender may no longer be imputed to the officer. The People, to sustain their burden at the suppression hearing, must then demonstrate that the sender or sending agency possessed the requisite knowledge to justify the police conduct (People v Lypka, 36 NY2d 210, 213-214, supra; see, also, Whiteley v Warden, 401 US 560, 568). In the language of the two-pronged Aguilar-Spinelli rule, the People must establish both that the informant is reliable and the basis for his knowledge transmitted to the arresting officers (see Aguilar v Texas, 378 US 108, 114; Spinelli v United States, 393 US 410; cf. Illinois v Gates, 462 US _, 51 USLW 4709).* Just as a police officer may not arrest without probable cause, so he may not do so relying on hearsay information lacking a sufficient basis of knowledge to constitute probable cause (see People v Rodriguez, 52 NY2d 483, 491, supra). The hearsay information may be verified sufficiently, however, by observations of officers at the scene of the arrest (see Draper v United States, 358 US 307; and cf. People v Elwell, 50 NY2d 231, supra). The issue here is whether the hearsay information, as verified, provided sufficient probable cause for the search and seizure or whether probable cause may be found from the observed attendant facts and circumstances.
It is apparent from the record that the People did not make any effort to demonstrate the factual basis for the information broadcast or that the sending agency possessed the requisite probable cause upon which the arresting officers could predicate a search and arrest. The hear *376 ing Judge, deciding the motion before our decision in Elwell and relying upon the rule in Draper v United States (358 US 307, supra), held, however, that the probable cause could be found upon verification of the hearsay information because the observations of the arresting officers confirmed the hearsay information received from headquarters in every respect: the color, condition and model of the car involved in the burglaries and the number and State of its license plate, and the physical description of the defendant. We decided in Elwell, however, that that is not enough. Probable cause cannot be founded on the hearsay information because the details of it which were verified were all descriptive of the car and the suspect and not at all related to the crimes of burglary or possession.
Nevertheless, we find the search and arrest lawful. The police have the right to stop a citizen and inquire of him if they have reasonable suspicion that criminal activity is afoot (People v Stroller, 42 NY2d 1052; People v Stewart, 41 NY2d 65; People v De Bour, 40 NY2d 210.). And this is so, we have held, even if the information prompting the inquiry is unsubstantiated hearsay (see People v Stroller, 42 NY2d 1052, supra; People v Stewart, 41 NY2d 65, supra; People v Bronk, 66 Misc 2d 932, 934, affd 31 NY2d 995). The courts below have found that the officers had reasonable suspicion justifying the stop. Indeed, defense counsel concedes as much. The confirmation of the information from police headquarters, the sighting of a single occupant in a “very beat up” parked car at 4:00 a.m. in an area which had recently suffered numerous burglaries surely provided the reasonable suspicion necessary to justify the police approaching defendant, seeking identification of him and, when he failed to produce it, asking him to step out of the car (People v De Bour, 40 NY2d 210, supra; and see Pennsylvania v Mimms, 434 US 106; People v Livigni, 58 NY2d 894; People v Diaz, 41 NY2d 876, cert den 434 US 939; cf. People v Harrison, 57 NY2d 470). Since the finding of reasonable suspicion has support in the record, no further review is warranted (People v Harrison, supra). Having lawfully stopped defendant for inquiry, the police then observed the switchblade knife in plain view and had probable cause for defendant’s arrest independent of any *377 hearsay information from the station house and the subsequent search producing the stolen wallet was lawful. The fact that the body search which produced the wallet occurred before rather than after the arrest is immaterial as long as the search was founded upon probable cause (see People v Evans, 43 NY2d 160). Thus, unlike the police in Elwell, these officers had an independent basis to stop and inquire and it was augmented by what they saw which confirmed the hearsay information from the station house. They were not acting on the hearsay information alone.
Finally, we find no basis for reversal because of defendant’s pro se summation. At the conclusion of the trial, after having decided not to testify in his own behalf, defendant requested that he be permitted to waive the assistance of counsel and make his own summation. The court advised him that he had a constitutional right to represent himself but warned that he might not have the objectivity of an attorney and might be placing himself in an untenable position. When defendant acknowledged that he understood and that he wished to proceed pro se, the court granted his motion. The representation was limited to the summation and counsel was present throughout. Under the circumstances, the court sufficiently complied with the rules requiring that it inquire of the defendant and obtain defendant’s knowing and intelligent waiver of the assistance of counsel (see People v Sawyer, 57 NY2d 12, 21, cert den _ US _, 103 S Ct 830; People v Allen, 39 NY2d 916; People v McIntyre, 36 NY2d 10, 17).
In view of the affirmance of the first judgment, there is no occasion for us to consider defendant’s contention that the second judgment should be reversed.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur.
Order affirmed.

 In Illinois v Gates (462 US _, 51 USLW 4709), the Supreme Court overruled the Aguilar-Spinelli rule governing hearsay information and adopted a totality of the circumstances test. In view of our analysis, we have no occasion to consider the effect of that decision on our State rule set forth in People v Elwell (50 NY2d 231).