■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES REYNOLDS, Appellant. — Appeal by defendant from two judgments of the County Court, Nassau County (Baker, J.), the first rendered October 19, 1981, convicting him of two counts of robbery in the first degree, upon a jury verdict, and imposing sentence, and the second rendered May 20, 1982, convicting him of two counts of robbery in the first degree, upon a jury verdict, and imposing sentence.

Judgments affirmed.

On January 17, 1980, at about 8:45 P.M., Officer Raymond Vogel of the Garden City Police Department was on patrol in his car in Garden City parking field No. 8. He was positioned behind a variety store which was to close at 9:00 P.M. Vogel had been notified by a Nassau County Police detective that a series of robberies and rapes had occurred in Nassau County, including Garden City. The Nassau County Police were conducting an investigation, attempting to find the perpetrator of these crimes. The *modus operandi* of the perpetrator, as related to Vogel by the detective, was that he would enter stores attended by a female immediately prior to the time of closing and announce a robbery. Vogel was given a physical description of the suspect, to wit, a male black, 25 to 30 years old, about six feet tall, with a short Afro hairdo, a thin moustache, and an elongated face with high cheekbones. He was further described as being soft spoken, well groomed, and having manicured nails. During some of the incidents, he wore a short waist-length leather jacket, a pair of black snakeskin shoes, a brown and beige wool knit cap, a brown scarf, tan gloves, and aviator-type sunglasses.

Officer Vogel noticed a man who appeared to have a short Afro hairdo slouched in the driver's seat of a brown 1971 Mercury Cougar, which was parked in the parking field. Vogel turned his spotlight on the rear of the vehicle. The driver turned around and looked directly at Vogel, who noticed that the man was a black male with a short Afro hairdo, an elongated face and high cheekbones. He appeared to be in his twenties. Eventually, the driver left the parking field and proceeded to Franklin Avenue. Officer Vogel radioed police headquarters and requested a registration check on the license plate of the car. The response was that "there was no readout other than a historical reference on the plate", meaning that the vehicle was not currently registered. Vogel stopped the vehicle at 600 Franklin Avenue and asked defendant for his license and registration. Defendant only produced a learner's permit which is invalid at night. Vogel asked him why he had been sitting in his car behind the store, to which defendant replied that he was window shopping for a present for his girlfriend. Vogel noticed that defendant was soft spoken and had manicured fingernails. Subsequently, other officers arrived and defendant was removed from the car. After defendant was placed in a police car, Vogel noticed a brown and beige wool knit cap, a brown scarf, and a pair of tan gloves on the front seat, and a pair of aviator-type sunglasses on the driver's sun visor. Vogel also noticed that defendant was wearing a short waist-length leather jacket and black snakeskin shoes.

At the station house, Vogel noticed that defendant was wearing an Omega watch which resembled one of the items stolen

during one of the robberies. Subsequently, the police searched defendant's automobile and found a gun hidden behind a radio mounted in the dashboard.

At the suppression hearing, Officer Vogel testified regarding the circumstances surrounding the arrest. However, the People failed to call the police officers who gave Vogel the information regarding the perpetrator's description and *modus operandi,* and failed to establish the source of the radio communication that defendant's car was not properly registered. Thus, defendant claims that all of the evidence seized from him, to wit, his clothing and the gun, and the subsequent lineup identifications by the complaining witnesses should be suppressed. We find that the motion to suppress evidence was properly denied.

A police officer may act on the strength of information received by him from a fellow officer or from the police department and assume its reliability. The sender's knowledge is thus imputed to the receiver. If the information so provided is sufficient to establish probable cause, then the receiver presumptively possesses the requisite probable cause to search (see *People v Havelka,* 45 NY2d 636; *People v Lypka,* 36 NY2d 210; *People v Ward,* 95 AD2d 233). However, once the reliability of that information is challenged upon a motion to suppress, the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act (see *People v Lypka, supra; People v Ward, supra*). This is the case even if the hearsay information is subsequently verified by the observations of the arresting officer (see *People v Landy,* 59 NY2d 369, 376; *People v Elwell,* 50 NY2d 231).

We find that the stop, search and arrest of defendant were lawful. The police may stop a citizen and inquire of him if they have reasonable suspicion that criminal activity is afoot (see *People v Landy, supra; People v Stroller,* 42 NY2d 1052; *People v Stewart,* 41 NY2d 65; *People v De Bour,* 40 NY2d 210), even if the information prompting the inquiry is based on unsubstantiated hearsay (see *People v Landy, supra*). Thus Officer Vogel's observation of defendant slouched in the driver's seat of his car, parked behind a store which was about to close, matching the *modus operandi* of the perpetrator of various robberies and rapes in the area, coupled with the fact that defendant's facial features matched the physical description of the perpetrator confirmed the hearsay information and permitted an inference of reasonable suspicion that criminal activity was afoot, justifying the stop. Moreover, under the circumstances of this case, where the police were conducting an investigation regarding a

series of committed crimes, the arrest was not based on information from an unknown source of unknown reliability (see *People v Petralia,* 62 NY2d 47). The sending officer, the Nassau County Police detective, was obviously involved in the investigation and possessed the requisite knowledge to justify the challenged police conduct.

In addition, once defendant failed to produce a valid driver's license and registration, the police were authorized to order defendant out of the car (see *Pennsylvania v Mimms,* 434 US 106; *People v Landy, supra; People v Livigni,* 88 AD2d 386, affd 58 NY2d 894), and were authorized to arrest him and remove him to the police station, and to frisk him before doing so (see *People v Ellis,* 62 NY2d 393; *People v Copeland,* 39 NY2d 986; *People v Troiano,* 35 NY2d 476), notwithstanding that the People failed to establish the reliability of the report that defendant's automobile was improperly registered. Furthermore, since Officer Vogel observed defendant's clothing and the wool cap, scarf, gloves and sunglasses in plain view in defendant's car, the police had probable cause to detain defendant.

Having then noticed that defendant was wearing a watch similar to one which had been taken during one of the alleged robberies, the police not only had probable cause to arrest defendant (*People v Landy, supra*), but had probable cause to believe that contraband (the gun used in the alleged robberies) was located somewhere within the vehicle, and thus, were authorized to conduct a full blown search of the vehicle (see *United States v Ross,* 456 US 798; *People v Ellis, supra; People v Langen,* 60 NY2d 170; *People v Belton,* 55 NY2d 49). Therefore, defendant's motion to suppress was properly denied.

Defendant also contends, *inter alia,* that the trial court erred in denying his motion to produce, pursuant to *Brady v Maryland* (373 US 83), the victim of a rape which defendant had not been charged with, who had assisted the police in making a composite sketch, and that the trial court improperly charged the jury with regard to reasonable doubt when the court stated: "[t]he real question is whether * * * you have or have not an abiding belief amounting to a moral certainty that the defendant is guilty". Regarding the *Brady* application, evidence that the defendant may not have committed a crime he was not charged with is irrelevant and inadmissible (see *People v Johnson,* 60 AD2d 555, affd 47 NY2d 785) and is not exculpatory as to the charged crime (cf. *People v Andre W.,* 44 NY2d 179). Therefore, defendant's *Brady* application was properly denied.

With regard to the charge, examination of the charges during both trials indicates that the concept of reasonable doubt was

correctly explained to the jury (see *People v Ortiz*, 92 AD2d 595; *People v Love*, 92 AD2d 551; *People v Turrell*, 66 AD2d 862, affd *sub nom. People v Pena*, 50 NY2d 400). We note that the words "moral certainty" were omitted during the charge in the second trial and that defense counsel only excepted to this portion of the charge during the second trial.

We have considered defendant's other contentions and find them to be without merit. Mollen, P. J., Weinstein, Rubin and Eiber, JJ., concur.