OPINION OF THE COURT
John F. O’Shaughnessy, J.
This is a decision following a Huntley hearing.
The People presented two witnesses, both veteran Nassau County Police detectives, Detective Glenn Dowd and Detective Joseph Brand. The defendant Bruce Bing testified in his own behalf.
Based upon the testimony given by, and my observations of, the witnesses on the stand, I make the following findings of fact.
A robbery-burglary had occurred at the rectory of St. Joachim’s Church in Cedarhurst, Nassau County, on May 17, 1985. The Nassau County Police came to the scene, were told the facts of the incident, and obtained a description of the perpetrator from a nearby worker named "Kerins”. The description was of a male black in his twenties, about six feet tall, weighing 150 pounds, thin build, short black "Afro” hair, light brown complexion, with goatee and beard.
*63 Detective Glenn Dowd was assigned to the case; he rereviewed the file and a computer printout on or about May 19.
A few days after the burglary, Dowd received a message that Cecil Scott wanted to see him. Thereafter, Dowd saw Scott on the street. Scott came to Dowd, talked on his own, and told Dowd he had been with Bruce Bing on May 17 when Bing said he was going "to do” a burglary. Later that day, Scott said, Bing told him that he had "hit” a house next to the church and that the take "wasn’t that great.” Scott also told Dowd that the defendant was "hot [wanted] in [the State of] Ohio.” Scott is a known drug addict. He asked Dowd at this meeting for $22; that money was subsequently paid over to him.
Detective Dowd testified that he knows and has used Scott as a confidential informant over a period of 10 years. On 5 to 10 occasions Scott has given Dowd information which has been of material assistance in criminal investigations. The details of the information Scott provided in two previous cases were given at the hearing. I find the informant, Cecil Scott, to be reliable, and the information he provided Detective Dowd to be worthy of belief. (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410; People v Rodriguez, 52 NY2d 483, 488-489 [1981]; People v Landy, 59 NY2d 369, 375 [1983].)
After the hearing, defense counsel raised a Lypka issue. This court finds that was probable cause for the arrest of the defendant. The detective relied on his review of the police department file, a computer printout, a physical description of the perpetrator given by an eyewitness and information given to the detective by a confidential informant known to be reliable. The detective’s information was derived from the numerous sources enumerated above, and was not based solely on an unsubstantiated radio broadcast as in Lypka, nor on his review of a file prepared by some unknown officer. (People v Lypka, 36 NY2d 210 [1975].)
On May 25, at about 4:30 p.m., Bruce Bing was seen on a street corner in Lawrence by Detectives Dowd and Brand. The officers arrested, handcuffed and placed the defendant in the rear seat of an unmarked police vehicle. The defendant was transported to the Fourth Precinct in Woodmere. The ride was of about 10 minutes duration. In the car and on the way to the precinct, Detective Brand, who was seated in the front passenger seat, "Mirandized” the defendant from memory, and told Bing that they knew he was wanted in Ohio and that *64 he was a suspect in the church robbery-burglary. He then asked the defendant if he wanted to talk to them about it. The defendant said words to the effect that he was glad that they got him, either because the drugs were killing him or because he needed a drug program. Bing acknowledged that he was the person wanted in Ohio, and that he had committed the crime at St. Joachim’s rectory. He revealed all of the pertinent facts of the crime in the police car on the way to Woodmere. They arrived at the Fourth Precinct at 4:45 or 4:50 p.m. There, the defendant was read his rights from a card. He then read the card, and indicated that he understood his rights by signing "Yes” and his name. Bing again went over the events of the crime, and Detective Brand typed it up in statement form, obtaining additional details from the defendant. When the statement was finished, it was given to the defendant to read. The defendant, an acknowledged high-school graduate, appeared to read the statement. When finished, he was asked if it was correct. He then signed it. The statement also has corrections which are initialed, and it was witnessed by the detectives.
This court finds the defendant’s statements to be voluntary and spontaneous. It is well established that the accused has a right to counsel. "It is equally well settled however that '[a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence * * * There is no requirement that police stop a person who * * * states that he wishes to confess to a crime * * * Volunteered statements of any kind are not barred by the Fifth Amendment’ (Miranda v Arizona, [384 US 436,] 478 * * *).” (People v Jackson, 41 NY2d 146, 151 [1976].) The test is to determine whether the defendant spoke with genuine spontaneity and not as the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed. (People v Maerling, 46 NY2d 289, 302-303 [1978]; People v Lanahan, 55 NY2d 711, 713 [1981].)
The defendant, in his testimony, admitted his drug addiction and described his habit. I find that while he may have been suffering some withdrawal symptoms at the precinct, it did not interfere with his ability to understand his rights. I find the defendant’s description of his symptoms to be exaggerated. He was examined at the Nassau County Medical Center in the early evening hours of May 25th and found fit for jail confinement. He is a prior felony offender and no stranger to the system; he knew the import of what he was *65 asked, and knew what he was required to do and not do. I have examined the testimony of the defendant closely. The statement that he was on his way back to Rockaway at 4:30 p.m., to pick up drugs at no cost to him, I reject in light of his testimony that he had been in Rockaway earlier in the day and apparently made no effort to procure drugs. The detectives were aware that the defendant was an addict and so testified. Detective Brand’s testimony shows that he knew the defendant was in discomfort. Defendant argues that the confession was the result of psychological coercion and physical duress relating to his alleged withdrawal symptoms. While he may have experienced some discomfort after a period of time in the station house, he did not exhibit the symptoms of withdrawal to such an extent as to constitute coercion. (See, People v Adams, 64 AD2d 712 [2d Dept 1978].) His alleged withdrawal symptoms did not develop until well after the defendant’s oral statement. In any event, I find that the defendant admitted to the crime within minutes of his arrest and, from that point on, it was a question of reducing his confession to writing, obtaining his signature, and completing the forms and processing. When asked to choose between the testimony of the detectives and that of this defendant, I choose to credit that of the police.
This court finds that both the oral statement and the written statement were voluntarily given and are admissible. (People v Kaye, 25 NY2d 139 [1969]; People v Lynes, 49 NY2d 286 [1980]; People v Lanahan, 55 NY2d 711 [1981], supra.)
Defendant further argues that he could not waive his right to counsel in the absence of counsel because he was represented by an Ohio attorney on charges pending in Ohio. (People v Rogers, 48 NY2d 167 [1979]; People v Bartolomeo, 53 NY2d 225 [1981].)
That the police department had knowledge of the defendant’s representation by an attorney in Ohio, on a charge pending in that jurisdiction, does not give rise to an indelible right to counsel, nor do the police have a duty to inquire further, nor should the police be bound by what they would have learned from such inquiry. (See generally, People v Bertolo, 65 NY2d 111, 117-120 [1985].)
A defendant’s indelible right to counsel attaches once a criminal action has commenced or earlier, if there has been significant judicial activity. (People v Samuels, 49 NY2d 218 [1980].) Once that right attaches, it cannot be waived in the *66 absence of counsel. (People v Settles, 46 NY2d 154 [1978].) In the instant case, no criminal action had yet been commenced (CPL 1.20 [17]), and no judicial activity (significant or otherwise) had occurred here with regard to this defendant. Furthermore, representation, in New York, by an attorney not admitted to practice in this State is unlawful (18 Intl. v Interstate Express, 116 Misc 2d 66 [NY County 1982]). Merely giving legal advice constitutes practicing law. (Spivak v Sachs, 16 NY2d 163 [1965].) His Ohio "counsel” could not therefore lawfully advise the defendant in New York. (22 NYCRR 520.9 [e].) The application of Rogers-Bartolomeo to the instant case would be an unreasonable overextension of that principle. While the defendant’s right to counsel is to be safeguarded, it must be tempered with reason and common sense. Here there is no evidence of bad faith on the part of the police department, or of infringement by the police on any right of the defendant to counsel in New York. (Cf. People v Felder, 47 NY2d 287 [1979].)
This court is aware of the Court of Appeals decision in People v Ready (61 NY2d 790 [1984]) and finds it inapplicable. In Ready, a man was arrested in South Carolina on a New York warrant teletyped to South Carolina police, based on an accusatory instrument filed in New York. The defendant spoke with a New York detective on the telephone and, during the course of that discussion, told the detective that he was represented by a South Carolina attorney. Statements made after the defendant advised the detective that he was represented by counsel were suppressed. The court held that the defendant’s indelible right to counsel had been violated. (See, People v Samuels, supra.) In the instant case, no such right has been violated because no accusatory instrument had yet been filed in New York. Furthermore, the defendant’s rights guaranteed under Rogers-Bartolomeo are not applicable in Ohio. Finally, the fact that the defendant had Ohio counsel on an unrelated Ohio charge, which jurisdiction he fled, is also inapposite to the Ready case where the defendant, while in South Carolina, retained a South Carolina attorney on a New York charge.
It is the finding of this court that the presence of an out-of-State attorney on an out-of-State charge does not cause New York’s indelible right to counsel to attach. The defendant here was therefore free to waive his right to counsel without an attorney being present.
*67 CONCLUSIONS OF LAW
1. The informant Cecil Scott was reliable.
2. Based upon the information independently available to the police of the circumstances of the crime and that obtained from the confidential informant, there existed probable cause to arrest the defendant.
3. The defendant was advised of his rights under Miranda v Arizona (384 US 436, supra), which he understood and waived in the police car and at the precinct.
4. There were no promises, threats or inducements made by the detectives to secure the defendant’s confession.
5. The defendant was fully aware and was not under such duress as would violate any of his constitutional rights at the time of either his oral or written statement.
6. The defendant’s confession was voluntarily made.
7. There was no duty on the part of the police to inquire concerning his legal representation in the State of Ohio.