OPINION OF THE COURT
Edward M. Horey, J.
This motion is one to suppress the fruits of a search carried out pursuant to a search warrant. The defendant urges that *24 there was no probable cause for the issuance of the search warrant. The defendant urges that as a result of the lack of probable cause the search subsequently conducted was illegal and the evidence there obtained must be suppressed. The defendant concludes by urging that the arrest of the defendant following the search must be declared illegal as well.
A "Wade Hearing” was held in this case on three separate sessions on March 27, May 22 and July 2, 1985. Other motions have also been noticed, heard and determined.
Although this court offered the parties an opportunity to conduct a hearing on the motion at bar, the defendant, through his attorneys and the District Attorney, have opted to waive a hearing and proceed on a stipulated record of prior proceedings which have been had. By stipulation of the attorneys, the transcripts of proceedings previously held are part of the record upon this motion as are, additionally, the supplemental affidavits of Larry Himelein, District Attorney, sworn to December 21, 1984 with several exhibits attached thereto consisting of the application for the search warrant, the supporting depositions of Alan Emerson, Larry R. Graham, Deborah Ann Cleveland and Kim Marie Stickel, the search and seizure receipt, an inventory signed by Inspector Hayes, Bureau of Criminal Investigation, a search warrant dated September 8, 1984 issued by Town Justice James Burrow.
The relevant facts reviewed for consideration on the motion at bar are as follows: Shortly after midnight on Saturday, September 8, 1984 two women, viz., Deborah Cleveland and Kim Stickel, were walking along Maple Avenue in the Village of Franklinville, New York. They were en route to an apartment rented by Miss Cleveland which was also located on Maple Avenue only a short distance from the residence located at No. 3 Maple Avenue. As the two women neared the residence known as No. 3 Maple Avenue they observed a man running from the porch of the house. They observed this man as he ran towards them, as he passed them and as he ran away. When first observed, the man was approximately 10 feet distant. The man passed close to the two women. Miss Cleveland testified that the distance upon passing was within three feet of her. Street lights were located in the immediate area of the event and the area was described as "very well lighted”. Both Miss Cleveland and Miss Stickel described in detail the man’s physical appearance and his attire.
Miss Cleveland and Miss Stickel proceeded along Maple *25 Avenue a short distance and entered the apartment of Miss Cleveland. This apartment was described as being located about four houses distant from No. 3 Maple Avenue. Within about five minutes following entry into their apartment the two women heard a fire alarm and looking out a window in the apartment observed the fire at No. 3 Maple Avenue. The two women went to the fire scene. There they both observed the same man that they had seen previously running from the porch of No. 3 Maple Avenue. They reported these observations to Franklinville Village Police Officer Larry Graham who was present at the scene of the fire. Both of them pointed the individual out to Officer Graham. Officer Graham was familiar with the person that the women had pointed out and knew him as "Billy” Keller who is the defendant William Keller. The consequence of the fire was both dramatic and tragic. Three persons were burned to death.
Early on the morning after the fire, depositions were taken of Miss Cleveland and Miss Stickel outlining the facts previously recited. A deposition of one Alan Emerson, arson investigator for the New York State Bureau of Criminal Investigation, was prepared. That deposition opined that the fire at No. 3 Maple Avenue on the morning of September 8, 1984 was the result of arson. The foregoing package of depositions together with an application for a search warrant by Investigator Hayes of the Bureau of Criminal Investigation were presented to Franklinville Town Justice James Burrow who signed a search warrant on September 8, 1984. The defendant contests the sufficiency of the information presented to the Justice for the issuance of the search warrant.
Touching now on the issue of a proper basis for the issuance of a search warrant, it is clear that the Supreme Court of the United States has evolved the requirements of "probable cause” and more relevantly has evolved the requirements necessary to satisfy that constitutional requirement of probable cause under the 4th Amendment of the Federal Constitution.
It appears that the leading cases are Aguilar v Texas (378 US 108 [1964]) and Spinelli v United States (393 US 410 [1969]) and more recently Illinois v Gates (462 US 213 [1983]).
The Aguilar (supra) and Spinelli cases (supra) attempted to develop a test to guide magistrates in determining when the information of an informant was sufficient to furnish probable cause for the issuance of a search warrant. A two-pronged test *26 was evolved. The first prong dealt with the basis of the informant’s knowledge; the second dealt with the reliability and credibility of the informant. In 1983, as a consequence of the decision in Illinois v Gates (supra), the prior AguilarSpinelli test was replaced by a test commonly referred to as the "totality of circumstances” test.
70 Cornell Law Review 316, 316-317 (Abandonment of the Two-Pronged Aguilar-Spinelli Test: Illinois v Gates) states of the decision of Illinois v Gates (supra): "Gates does more than replace the two-pronged test with a simpler, more practical standard; it drastically expands the opportunity for police to use less than reliable information as a basis for warrants * * * [T]he fourth amendment sometimes collides with law enforcement interests by limiting the use of suspicious but useful information as a basis for warrants.”
There appears to be considerable doubt as to whether the New York appellate courts have either adopted or rejected the more lenient test determined in Illinois v Gates.
In People v Simon (107 AD2d 196, 200 [4th Dept, Mar. 1, 1985]), the opinion written by Presiding Justice Dillon stated "[a]s this court has observed recently, there is no indication that these tests apply in New York (see, People v Bigelow, 105 AD2d 1110).”
In People v Contompasis (108 AD2d 1077, 1078) decided by the Third Department in February 1985 that court stated: "This court has been reluctant to invoke the more flexible 'totality of the circumstances’ test set forth in Illinois v Gates (462 US 213, 103 S Ct 2317) in view of the Court of Appeals reluctance to do so (see, People v Landy, 59 NY2d 369, 375, n; People v Ward, 99 AD2d 561, 562, n; People v Brown, 95 AD2d 569, 572).”
In People v Landy (59 NY2d 369, 375, n) decided by Court of Appeals June 30, 1983 in an opinion by Judge Simons there was contained a footnote which stated: "In Illinois v Gates, 462 US [213], 51 USLW 4709), the Supreme Court overruled the Aguilar-Spinelli rule governing hearsay information and adopted a totality of the circumstances test. In view of our analysis, we have no occasion to consider the effect of that decision on our State rule set forth in People v Elwell (50 NY2d 231).” It is noted that court in reaching its decision stated and applied the tests determined in Aguilar v Texas (supra) and Spinelli v United States (supra). In fact, those cases were cited. (See, 59 NY2d 369, 375, supra.)
*27 More recently, our Court of Appeals has twice addressed the application of the test determined in Illinois v Gates (supra). In People v Johnson (66 NY2d 398 [Nov. 26, 1985]) in an opinion by Judge Simons it was held that as a matter of State constitutional law the decision in Illinois v Gates did not apply to warrantless arrests. Immediately thereafter in People v Bigelow (66 NY2d 417, 425 [Nov. 26, 1985]), the Court of Appeals again in an opinion by Judge Simons reviewed in great depth the provisions of Illinois v Gates (supra) in reference to a case which tested the sufficiency of evidence for the issuance of a search warrant. After stating that there was no reason for the Court of Appeals to adopt the decision of Illinois v Gates for testing the issuance of a search warrant, the court nonetheless proceeded to test the evidence in the Bigelow case (supra) under the totality of circumstances test enumerated in Illinois v Gates.
We can only leave for speculation the reasons that prompted Judge Simons and our Court of Appeals to state categorically the nonapplication of the test determined in Illinois v Gates and then proceed to apply that test to the facts presented in People v Bigelow. Why the courts of New York are not bound by the decision of Illinois v Gates or alternatively and more relevantly should not follow it and why the test determined there is not either definitively accepted or rejected, all await explanation. It is obvious that if each State seeks to imitate Massachusetts and New York and adopt its own rule it is only a matter of time when there will be 51 rules — one under the Federal Constitution and 50 under State Constitutions all incidentally founded on the same precise constitutional provisions. The delay, problems and complexities that attend the practice of State appellate courts reaching differing constructions of State constitutional provisions identical to Federal constitutional provisions on search warrants are pointedly noted in the concurring opinion of Justice Stevens in Massachusetts v Upton (466 US 727).
Most recently, the Supreme Court in 1986 reversed the New York Court of Appeals decision of People v P. J. Video (see, 65 NY2d 566, revd 475 US —, 89 L Ed 2d 871).
In reversing the decision of Judge Simons written for our Court of Appeals, the Supreme Court scored the tests employed by the New York court for the issuance of a search warrant for alleged pornographic films and stated pointedly that the proper test was that set forth in Illinois v Gates. The *28 test which had been applied by the Court of Appeals in P. J. Video was stated to be that determined in People v Hanlon (36 NY2d 549). (See, People v P. J. Video, 65 NY2d 566, 571, supra.) A review of the Hanlon decision discloses that it adopted and applied the tests determined in the Aguilar and Spinelli cases (supra). It thus appears that use of the tests determined in the Aguilar and Spinelli cases is improper under the 4th Amendment of the Federal Constitution even where the material signed is within the parameters of protection of the 1st Amendment of the Federal Constitution. (See, 475 US —, —, 89 L Ed 2d 871, 880.) One can only wonder what the result will be when State constitutional provisions are reviewed.
How it serves the public interest to leave the Bench, Bar and defendants in a state of quandary over the proper test to be applied to the issuance of a search warrant, the application for which is encouraged by our courts, is raised so frequently in our courts, and is of such import, will undoubtedly be explained and the conflicting appellate determinations will be resolved. Hopefully, this will be soon.
The District Attorney postulates that the appropriate test in the case at bar is "the constitutional mandate of reasonableness” test set forth in Zurcher v Stanford Daily (436 US 547 [1978]).
In his brief he urges that neither the tests determined in the Aguilar and Spinelli cases nor in Illinois v Gates are applicable.
The tests established in those cases he urges apply only to professional informant situations and not to eyewitness situations. This court does not credit this distinction and has found no New York decisional law which supports it.
Happily, in the instant case, as in People v Santana (106 AD2d 523 [2d Dept 1984]), it makes no difference whether the test for the issuance of the search warrant is the AguilarSpinelli test or the Illinois v Gates test. Neither does it make a difference if the test applied is that in Zurcher v Stanford Daily. The issuance of the search warrant in issue passes muster under all of the tests established in those cases.
Here the informants were two young women, ordinary citizens unacquainted with the defendant. Their information was based upon direct and personal observation. Their information was supported by the local village policeman who was acquainted with the defendant and observed him at the scene *29 of the fire. The arson investigator for the State Police made a written finding predicated upon personal examination that the fire in issue had been deliberately set. The application for the search warrant by Bureau of Criminal Investigator Hayes recited that he had personally arrested the defendant for arson on prior occasions.
The time of the occurrence of the defendant’s flight and of the subsequent fire, to wit: after midnight, the absence of any persons other than the defendant in the area at the time, the quiet residential nature of the place of the fire are all properly part of the relevant circumstances to be considered.
Most significantly relevant to this court is the proximity in time of the fire at 3 Maple Avenue to the observed departure of the defendant from that residence. According to the deposition of Miss Cleveland only "about five minutes” had elapsed between the time she observed the defendant fleeing the residence and the time she heard the fire alarm. Crediting any time loss for the first observation of the fire, the call to the fire department and that department’s response by giving the alarm, there would have been even a shorter span of time that elapsed between the onset of the fire and the defendant’s hasty departure.
Certainly the People have established both that the. informants were reliable and there was adequate basis for their information. These considerations meet the two-pronged test of the Aguilar-Spinelli cases. (See, People v Landy, 59 NY2d 369, supra.) The information supplied by the same informants together with all of the relevant circumstances even more easily meets the totality of circumstances test of Illinois v Gates (supra). (Compare, People v Bigelow, 66 NY2d 417, supra.) Certainly, they comply with a mandate of reasonableness. (See, Zurcher v Stanford Daily, 436 US 547, supra.)
The court reaches the foregoing conclusions upon consideration that when a search warrant has been issued the bona tides of the police is presumed and a search under the warrant is to be upheld even in a marginal or doubtful case. (United States v Ventresca, 380 US 102 [1965].) To same effect is People v Hanlon (36 NY2d 549 [1975], supra). Applications for a search warrant are not to be read in a hypertechnical manner as if they were entries in an essay contest but rather considered in the clear light of everyday experience and accorded all reasonable inferences. (Brinegar v United States, 338 US 160 [1949]; United States v Ventresca, supra; People v Hanlon, *30 supra, at p 559.) The most reliable means of verifying whether an informant knows what he is talking about is "through his own description of underlying circumstances personally observed” (People v Bigelow, 66 NY2d 417, 423, supra).
The court touches finally on the defendant’s contention that the statement of Investigator Hayes of prior arrest of the defendant for arson was not a proper consideration in the issuance of the search warrant. Upon review this court determines that the background and history of criminal activity of a suspect is a relevant consideration. In United States v Harris (403 US 573 [Chief Justice Burger, 1971]) it was held that a policeman’s knowledge of a suspect’s reputation for criminal activity was a practical consideration which an officer or a magistrate could weigh in the issuance of a search warrant. The language of the court was decisive on the point. "We cannot conclude that a policeman’s knowledge of a suspect’s reputation — something that policemen frequently know and a factor that impressed such a 'legal technician’ as Mr. Justice Frankfurter — is not a 'practical consideration of everyday life’ upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant’s tip.” (403 US 573, 583, supra.) To the same effect is Jones v United States (362 US 257 [opn by Justice Frankfurter, I960]). In the opinion of this court there was more than sufficient basis for probable cause in the issuance of the search warrant even if the statement of Officer Hayes was divorced from the application and eliminated from the magistrate’s consideration.
This court finds that there was probable cause for the issuance of the search warrant. Accordingly, the defendant’s motion to suppress is denied.