OPINION OF THE COURT
Gabriel W. Gorenstein, J.
The defendant in this case is charged with criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]) and the aggravated unlicensed operation of a motor vehicle in the third degree (Vehicle and Traffic Law § 511 [1] [a]). On December 8, 2000, a hearing was held on the defendant’s motion to suppress evidence as the fruit of an unlawful seizure (commonly referred to as a Mapp hearing). Police Officer William Thide testified on behalf of the People. The defendant *260 testified on his own behalf. As described further below, the court finds Officer Thide to be a credible witness and rejects the testimony of the defendant in material respects. The following are the court’s findings of fact and conclusions of law:
Findings of Fact
On June 13, 2000, the defendant was operating a motor vehicle, a 1998 two-door Chevrolet Cavalier. The defendant pulled over to the curb to turn into a parking garage. Officer Thide, who was operating with a partner out of a yellow cab, ran the license plate of the defendant’s vehicle on a mobile digital computer and discovered that the registration on the vehicle was suspended. The officer stopped his vehicle behind and to the. right of the defendant’s vehicle. The officer indicated through flashing red lights that the vehicle was being detained by the police. The officer approached the window on the left side of the defendant’s vehicle and asked for his license and registration. The defendant provided these documents and the officer took them back to his car. Upon running the defendant’s license through the mobile digital computer, he discovered that the defendant was driving with a suspended license.
The officer thereupon returned to the defendant and instructed him to exit the vehicle. The defendant stated that the officer allowed him to collect his change and cellular phone from the well of his car. While the officer did not recollect this, it is not material to this case.
The defendant exited the vehicle and, while he was still between the car and the open door, the officer placed handcuffs on him. At this point, the officer observed an object in plain view in the space between the front seat and the front door. Based on his police training, the officer recognized this object to be a blackjack. The officer moved the defendant away from the car and shut the door. The officer subsequently recovered the blackjack and vouchered it. The blackjack was admitted into evidence at the hearing as People’s exhibit 1.
The defendant testified that he did not have the blackjack in the space between his seat and the car door. He asserted that he knew this to be true because he must look into that area and place his own arm into that area in order to open the broken window on that side. He also stated that once he was put in the yellow cab after his arrest, he in fact saw other officers at the scene “rambling around” in his car and pulling a blackjack from what appeared to be underneath the front seat. He also “saw” them give a triumphant cry when they found it *261 and “saw” them “laughing and joking around” about how they found it. He conceded he could not hear them. All this is alleged to have occurred while Officer Thide was talking to the defendant in the yellow cab.
The court chooses to credit the testimony of the officer regarding his observation and recovery of the blackjack for several reasons. First, the defendant seemed to have tailored his testimony on more than one occasion to fit what he thought would be a good story. For example, he estimated that when he was asked to leave his vehicle (a critical moment in the narrative since it was the time the officer stated he observed the blackjack) the officer was six to eight feet away — a distance that seems incredibly large given the situation. He testified that he spoke to Officer Thide while he was inside the yellow cab for “ten to fifteen minutes,” again an incredible claim given that there is no reason whatsoever for the officer to have spoken to the defendant for this length of time and the defendant offered no evidence at all to indicate what they could have been talking about for such a lengthy period. In addition, while he said he had no idea where the blackjack was in his car, he insisted that it could not have been in the one place the officer testified he found it.
In judging the defendant’s credibility, the court took into account that he had five criminal convictions in the last nine years, including convictions for criminal possession of stolen property, attempted criminal possession of stolen property, assault and resisting arrest. All of these suggest that he is ready to put his own interests above those of society.
Finally, the defendant’s ability to observe what was going on in his own vehicle is highly questionable. Putting aside the distance involved, the yellow cab was behind and to the right of his own vehicle, suggesting that he had no clear view at all of what the officers in this area were doing.
Conclusions of Law
The defendant argues that the motion to suppress the Department of Motor Vehicles (DMV) abstract,[1] the blackjack, and the officer’s observations of the defendant must be granted because the People failed to establish reasonable suspicion justifying the stop of his vehicle. Additionally, the defendant *262 moves to suppress the blackjack on the ground that there was no warrant for the search of the defendant’s vehicle nor does an exception to the warrant requirement exist.[2]
As an initial matter, the defendant’s motion to suppress the DMV abstract on any ground is denied. In order to have standing to challenge the admissibility of a DMV abstract the defendant must “establish that he had a legitimate expectation of privacy in the search of the DMV files and that his expectation of privacy was reasonable under the circumstances.” (People v Sajous, 180 Misc 2d 693, 694 [App Term, 2d Dept], lv denied 93 NY2d 1026 [1999].) The defendant has not met either of these criteria and therefore has not established that he has standing to challenge the introduction of the abstract. (Accord People v Cobb, 182 Misc 2d 808 [Crim Ct, Kings County 1997]; People v Smith, 170 Misc 2d 486, 491 [Crim Ct, NY County 1996].)
With respect to suppression generally, the defendant relies heavily on People v Lypka (36 NY2d 210, 213 [1975]). In essence, the defendant’s argument is that the blackjack must be suppressed because the People failed to meet their burden of proof to show that the stop of the defendant’s vehicle was justified. The defendant notes that the stop was based on the running of his plates and license through a computer system, which had shown his car’s registration invalid and his own license suspended. The defendant questions whether the computer system used by the police officer was in fact reliable. He provides no evidence at all of its unreliability. Nor does he claim that his registration or license was in fact valid.
People v Lypka held that police officers are justified in stopping an individual or making an arrest based upon information received by way of a radio, teletype or like transmission because the officer or department furnishing that information “presumptively” possesses the requisite probable cause which justifies the warrantless arrest. (36 NY2d, supra, at 213.) Lypka goes on to hold that where a defendant challenges an arresting officer’s warrantless action, the presumption of probable cause *263 disappears and it becomes incumbent upon the People to establish that the officer or agency imparting the information in fact possessed the probable cause to act. (Id., at 214.)
The question in this case turns on whether a sufficient challenge was made by the defendant to the reliability of the computer data base that ran the check on the defendant’s registration and driver’s license. A subsequent case addressing the reliability of computer information provides some guidance on this question. In People v Landy (59 NY2d 369 [1983]), the police received a bulletin that identified a car that had been involved in several burglaries. Relying on this information, the police approached the defendant’s car and subsequently made a seizure. A hearing was held on the legality of that seizure. The Court of Appeals noted that as soon as it became apparent at the hearing that the prosecution relied on a radio bulletin, “defense counsel informed the court that she challenged the officers’ conduct pursuant to People v Lypka * * * and that she sought an offer of proof by the People to support the hearsay information they relied upon in making the search and arrest. Thus, the District Attorney had early notice of defendant’s claim and an opportunity to come forward with the necessary evidence.” (People v Landy, 59 NY2d, at 374.) This notice occurred on the “first day of the hearing” (id.), which obviously gave the People ample opportunity to address this issue and call an appropriate witness.
In this casé by contrast, the defendant at no time offered a specific challenge to the reliability of the evidence supplied by the Department of Motor Vehicles’ computer system. Certainly, the defendant was on notice at the time of his arraignment that such evidence would form at least part of the basis of the probable cause to arrest inasmuch as the accusatory instrument itself describes how the officer ran a DMV check of the defendant’s license. The defendant was silent on this matter throughout the hearing.
The defendant, anticipating this argument, points to a single sentence in his omnibus motion that he asserts preserves his claim. That statement states only that his arrest was “illegal because the information provided to the police by any informant or radio transmission was unreliable and insufficient.” (Defendant’s omnibus motion, at 11, 28.) This conclusory statement, however, buried in a lengthy motion and not further elaborated upon, cannot meet the defendant’s burden to mount a specific challenge to the reliability of the DMV data base.
Moreover, this is not a case where the police relied upon a *264 computer report that in turn relied upon a one-time individual judgment — for example, a physical description of a subject being sought or even a report that a vehicle had been stolen — as was the case in both Lypka and Landy (supra). It is this latter type of report that is the subject of virtually every decision cited by the defendant. (See, e.g., People v Weddington, 192 AD2d 750 [3d Dept 1993] [radio report that particular plates and vehicle were stolen]; People v Ynoa, 223 AD2d 975 [3d Dept] [radio report that vehicle of a certain description was carrying drugs], lv denied 87 NY2d 1024 [1996].) Such reports could not be received as substantive evidence of a subject’s description or that a car was stolen. Yet, courts routinely allow information from the DMV data base to constitute sufficient proof of the aggravated unlicensed operation of a motor vehicle, a criminal offense under Vehicle and Traffic Law § 511. (See, e.g., People v Wray, 183 Misc 2d 444 [Sup Ct, Kings County 2000], supra; People v Pabon, 167 Misc 2d 214 [Crim Ct, Bronx County 1995]; People v Garcia, 163 Misc 2d 862 [Crim Ct, Bronx County 1995].)
Some indicia of the reliability of such records already exists given that the Department of Motor Vehicles’ maintenance of records of registrations and of license suspensions has been mandated by law. (See, e.g., Vehicle and Traffic Law § 401 [2] [registrations]; §§354, 514 [1] [a] [suspensions]; see also Vehicle and Traffic Law § 201 [2] [designating any electronically stored records as original records].) Where a defendant challenges a data base that is so commonly relied upon by the courts, this court would require the defendant to make a specific and timely offer of proof as to the unreliability of the data base or at the very least of some particular aspect of the data base that applies to the defendant’s case. Were there to be any other rule, a mere conclusory questioning of the DMV data base would require the People to produce a witness to testify as to its reliability at every hearing where it had been used as a basis of a stop. Such a requirement would be wholly at odds with courts’ routine acceptance of this same data base in the absence of any supporting testimony to establish proof beyond a reasonable doubt.
In the end, this court deems it reasonable to accord a presumption of regularity to the DMV data base. Nothing in the record of this hearing suggests that there was any error that affected the defendant. The People have met their initial *265 burden, albeit through hearsay evidence, of showing probable cause. The defendant has not rebutted this showing. The motion to suppress is denied.[3]

. The DMV abstract is a document generated by the DMV which contains information regarding the revocation and suspension of drivers’ licenses. (See, e.g., People v Wray, 183 Misc 2d 444 [Sup Ct, Kings County 2000].)

. In an amended filing of their posthearing memorandum, the defendant also requested that the court draw an adverse inference from the People’s failure to call certain witnesses. Posthearing briefing was due from the defendant on January 12, 2001. The defendant sought and received an extension until January 17, 2001. Nonetheless, this request was not made until two days before the People’s papers were due, on January 31, 2001. Because the defendant’s request was untimely filed and was not accompanied by any application for an extension showing good cause for the failure to meet the court-imposed deadline, the court does not consider it.

. In a separate argument, the defendant asserts that there may have been a Rosario violation at the hearing due to the People’s failure to produce a “sprint report” or “radio run” of any call made by Officer Thide to other officers regarding the stop of Mr. Bryant. The People asserted at the hearing that Officer Thide made no such call. The People are directed to verify this information if it is possible to do so and to produce, on or before March 8, 2000, any written record of the testifying officer’s calls. If no such record exists, the People are directed to so certify to defense counsel in writing. If the People in fact discover a record of a call made by Officer Thide relating to the stop of the defendant, the defendant has leave to make a written motion seeking appropriate relief. Any such motion shall be referred to the trial court.